### COMMONWEALTH *vs.* MICHAEL J. FLYNN.

Essex.    December 4, 1933. — January 6, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Dog,* License. *Larceny. Statute,* Construction. *Words,* "Domestic," "Domesticated animal."

The words "any domesticated animal" in G. L. (Ter. Ed.) c. 266, § 46, include a dog, whether licensed or unlicensed, and indicate an intention of the Legislature in passing the act to include any dog as the subject of larceny.

The fact that the owner of a dog has not complied with statutory provisions as to its keeping gives no right to another to take it away and keep it as his own.

INDICTMENT, found and returned on September 15, 1933, and described in the opinion.

The indictment was tried in the Superior Court before *Hayden,* J., a judge of a district court sitting in the Superior Court under statutory provisions. Material evidence is stated in the opinion. The defendant was found guilty and alleged exceptions.

*L. F. Davis,* for the defendant.

*J. E. Wilson,* Assistant District Attorney, for the Commonwealth.

DONAHUE, J.    The defendant was tried and found guilty by a jury on an indictment which charged that he "did steal one chow dog of the value of one hundred dollars . . . of the property" of one Belzarine "against the peace of the Commonwealth . . . and contrary to the form of the statute in such case made and provided." The defendant excepted to the ruling by the trial judge that

the fact that the dog was not licensed was of no consequence and immaterial and to the refusal of the judge to direct a verdict of not guilty. It is not here argued by the defendant that the evidence did not warrant a conviction if, in this Commonwealth, it is a crime to steal an unlicensed dog, and the entire argument before us was directed to that question.

At common law while an action of trover or trespass would lie for the wrongful taking of a dog, that animal was held not to be the subject of larceny. See *Blair* v. *Forehand*, 100 Mass. 136, 140. Various reasons were given from time to time for the common law rule, among them "the baseness of their nature," 3 Coke Inst. 109; because (at a time when the larceny of property of trifling value was punishable by death) "They ought not to be things of a base nature, as dogs, cats, bears, foxes, monkeys, ferrets, and the like, which, howsoever they may be valued by the owner, shall never be so highly regarded by the law, that for their sakes a man shall die; as he may for stealing a hawk . . . in respect of that very high value which was formerly set upon that bird," 1 Hawk. P. C. c. 19, § 36; because dogs are kept for whim and pleasure and are unfit for food and as a class have no intrinsic value, 4 Bl. Com. 236; and because "even in a state of domestication, [they] never wholly lose their wild natures and destructive instincts." *Blair* v. *Forehand, supra.* The common law rule has been abrogated by statutes in England beginning with St. 10 Geo. III, c. 18, "An Act for preventing the stealing of Dogs." In this country reasons given for the common law rule have generally not been considered adequate under existing conditions to justify its retention and in many States it is a crime to steal a dog. In some States this has been accomplished by statutes specifically declaring a dog to be the subject of larceny. See *Graham* v. *Smith*, 100 Ga. 434; *Johnson* v. *McConnell*, 80. Cal. 545. In many jurisdictions the result has been reached by the interpretation of words in larceny statutes stating in general terms the subjects of larceny. The word "chattels" in such a statute has been held to include

a dog, *Hamby* v. *Samson*, 105 Iowa, 112, *Commonwealth* v. *Hazelwood*, 84 Ky. 681, *Mullaly* v. *People*, 86 N. Y. 365, *State* v. *Brown*, 9 Baxt. (Tenn.) 53, *In re Burkell*, 2 Alaska, 108, as have the words "corporeal personal property," *Hurley* v. *State*, 30 Tex. App. 333, "personal property or valuable thing," *Harrington* v. *Miles*, 11 Kans. 480, "property" and "personal goods," *State* v. *Brown*, 9 Baxt. (Tenn.) 53, 56. In some States the common law rule was adhered to. *Findlay* v. *Bear*, 8 S. & R. 571. *State* v. *Lymus*, 26 Ohio St. 400. *State* v. *Holder*, 81 N. C. 527. *Ward* v. *State*, 48 Ala. 161. In *Blankenship* v. *Commonwealth*, 133 Va. 638, the opinion quotes a statement from 17 R. C. L. 32 to the effect that while at strict common law the words "goods and chattels" would not include dogs, courts have declined to follow that rule and have held that the common understanding of the meaning of such words would be resorted to and that in such view dogs are clearly chattels. The opinion goes on to say that the court would be inclined to follow that conclusion if the question were an open one in Virginia and if the court did not feel that such course would contravene the established statutory policy in that State as to dogs.

The trial of the present case seems to have proceeded on the theory that the defendant was indicted under a statute of this Commonwealth which provides that "Whoever, without the consent of the owner and with a felonious intent, takes any domesticated animal, or a beast or bird which is ordinarily kept in confinement and is not the subject of larceny at common law, shall be guilty of larceny." G. L. (Ter. Ed.) c. 266, § 46. By St. 1906, c. 181, entitled "An Act relative to the larceny of domestic animals," the words "any domesticated animal, or" were inserted in an existing statute (R. L. c. 208, § 37) which was originally St. 1850, c. 303. The statute defines a specified act as larceny but in terms does not fix the penalty, hence for its ascertainment recourse must be had to the general statute relating to larceny (G. L. [Ter. Ed.] c. 266, § 30) which provides that "Whoever steals . . . the money

or personal chattel of another . . . shall be guilty of lar-
ceny . . ." and fixes a penalty if the value of the property
is $100 or less and a greater penalty if its value be more
than $100.  In the interpretation of a statute its words
are "the main source for the ascertainment of a legislative
purpose." *Commonwealth* v. *Welosky,* 276 Mass. 398, 401.
In considering the words of the statute here to be inter-
preted we may include the word "domestic" as well as
"domesticated" since the title of a legislative act may be
taken into account in its interpretation. *Brown* v. *Robin-
son,* 275 Mass. 55, 57.  The words "domestic animals"
and "any domesticated animal" are not technical words
or words which "have acquired a peculiar and appropriate
meaning in law" and they are therefore to be "construed
according to the common and approved usage of the lan-
guage." G. L. (Ter. Ed.) c. 4, § 6, Third.  In ordinary
speech, sanctioned as well by the dictionaries, the word
"domestic" means belonging to the home or household;
and the word "domesticated" means made domestic or
converted to domestic use.  Where descriptive of the
word "animals" they in general usage carry the meaning
of tamed, associated with family life, accustomed to live in
or near the habitations of men.  In *Blair* v. *Forehand,* 100
Mass. 136, 140, reference is made to "dogs and cats, and
other domestic quadrupeds" and to "dogs and cats . . .
in a state of domestication." See also *State* v. *M'Duffie,*
34 N. H. 523.  Where the words "domestic animal" or
"domesticated animal" have appeared in statutes they
have been held to include dogs. *People* v. *Campbell,* 4
Parker Cr. Rep. 386, 393. *Hurley* v. *State,* 30 Tex. App.
333. *Wilcox* v. *State,* 101 Ga. 563.  There are cases to the
contrary.  For example, it has been held that the words
"any domestic animal" in a statute making it a crime wil-
fully or maliciously to kill such an animal do not include
dogs (*State* v. *Harriman,* 75 Maine, 562), although the same
words, in a statute which provided that in stated circum-
stances any person may lawfully kill a dog found worrying,
wounding or killing "any domestic animal," were held to

include tame rabbits (*Chapman* v. *Decrow*, 93 Maine, 378) and cats (*Thurston* v. *Carter*, 112 Maine, 361).

The statute here to be interpreted employs the broad term "any domesticated animal." (Compare *Osborn* v. *Lenox*, 2 Allen, 207, 209.) It seems to us that the words taken in their ordinary and literal sense include dogs and indicate an intention of the Legislature in passing the act to include any dog as the subject of larceny. But in addition to the literal meaning of words, before the completion of the process of interpretation of a legislative enactment, consideration should be given to the system of law of which it is a part and to previous judicial decisions and statutes of the Commonwealth dealing with the same general subject. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 426.

During the last two hundred years Legislatures in this Commonwealth have from time to time passed, repealed, and amended many statutes declaring under what circumstances dogs may lawfully be killed without redress to their owner, and regulating the keeping, the collaring and the licensing of dogs. The primary object of these statutes has not been to confer a benefit on individuals or to give them rights or immunities with reference to another man's dog. Their general purpose has been the protection of the public from injury or damage done by dogs. *Cummings* v. *Perham*, 1 Met. 555. *Blair* v. *Forehand*, 100 Mass. 136. *Commonwealth* v. *Brahany*, 123 Mass. 245. *Morewood* v. *Wakefield*, 133 Mass. 240. *Nesbett* v. *Wilbur*, 177 Mass. 200. See *Carrington* v. *Worcester Consolidated Street Railway*, 222 Mass. 119, 120; *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 162. The statutes recognize some property rights of ownership in a dog; they make constant reference to the "owner" of a dog. They manifest no design that an owner who does not comply with their provisions by that very fact has no rights which the law will protect.

The fact that the owner of a dog has not complied with statutory provisions as to its keeping gives no right to

another to take it away and keep it as his own. *Cummings* v. *Perham, supra.* See *Bond* v. *Commonwealth*, 236 Ky. 472, 475; *Ewings* v. *Walker*, 9 Gray, 95. A person who under the statutes is authorized to kill an unlicensed dog, or a police officer who has a warrant for such killing issued in accordance with the statutes, acts without justification and incurs liability to its owner if he commits a trespass in doing the authorized act. *Cozzens* v. *Nason*, 109 Mass. 275. *Bishop* v. *Fahay*, 15 Gray, 61. While a person acting pursuant to statutory provisions may kill the unlicensed dog of another with impunity (*Morewood* v. *Wakefield*, 133 Mass. 240), if his dog in his absence kills the unlicensed, uncollared dog of another on the highway he is liable in damages to its owner. *Baer* v. *Tyler*, 261 Mass. 138. An unlicensed dog when on a highway is not a trespasser and outlaw and one who there negligently kills such a dog incurs a legal liability to its owner. *Lacker* v. *Strauss*, 226 Mass. 579. In the statutes in this Commonwealth pertaining to dogs we find nothing indicative of a legislative policy or purpose which prevents giving to the words "any domesticated animal" in the statute here construed their literal meaning and an interpretation including dogs licensed and unlicensed.

G. L. (Ter. Ed.) c. 266, § 47, provides: "Whoever wrongfully removes the collar from or steals a dog which is licensed and collared as provided in chapter one hundred and forty shall be punished by a fine of not more than one hundred dollars, or by six months' imprisonment, or both. . . ." Substantially this provision first appeared in St. 1859, c. 225, § 5, the penalty there fixed being a fine not exceeding $50. The present penalty was fixed by St. 1913, c. 551. By St. 1859, c. 225, a comprehensive system for the registration and licensing of dogs throughout the Commonwealth was first adopted (see also St. 1858, c. 139) although by St. 1797, c. 53, the owner of a dog was required to certify his ownership to the assessors for the purposes of taxation (see also St. 1798, c. 54), and St. 1824, c. 139, authorized and empowered, although it did not compel, municipalities to make by-laws concerning the licensing and

restraining of dogs and to fix penalties for a breach (Rev. Sts. c. 58, § 10). Our statutes since 1797, after as well as before the passage of statutes with reference to licensing, have generally required the owner of a dog to keep it collared (St. 1797, c. 53; St. 1798, c. 54; St. 1810, c. 109; St. 1811, c. 91; St. 1812, c. 146; Rev. Sts. c. 58, § 12; G. L. [Ter. Ed.] c. 140, § 137). It is the defendant's contention that the statute (St. 1859, c. 225) making it a crime to remove the collar from or steal a dog which is licensed and collared was special legislation intended by the Legislature to be all the protection given owners from the theft of their dogs and that it made inapplicable to dogs the then existing, and the present, general larceny statute under which money or personal chattels are the stated objects of larceny. It will be noted that the statute relied on by the defendant in terms includes not all licensed or all collared dogs but only such dogs as are both licensed and collared. There is a violation of the statute either if a licensed dog's collar is wrongfully removed even though it be not stolen, or if a licensed dog is stolen, provided at the time of the theft it was also collared as the statute requires. The penalty prescribed is just the same for either wrongful act and its amount does not depend upon the value either of collar or of dog. The statutory offence may be committed if neither has any value. In this respect the theory of the statute does not follow the conception of the common law that the subject of larceny must be a thing of value. In providing a penalty which is not graduated according to the value of the thing taken it does not accord with the general statutory policy here and elsewhere as to the penalty set for the crime of larceny. In the light of the history of the legislation in this Commonwealth pertaining to dogs and our judicial decisions as to the status of unlicensed dogs, this statute is reasonably to be construed as a part of the statutory system regulating, in the interests of the public, the keeping, collaring and licensing of dogs. It offers an inducement to owners of dogs to conform fully to the system by having their dogs both licensed and collared. The statute is of advantage by way of protection

to an owner of a licensed and collared dog if it has no value or if its value is difficult of proof. We cannot see in it anything which affects the power of a later Legislature to make unlicensed dogs the subject of larceny, or anything which tends to indicate that the Legislature, in enacting the statute which makes the felonious taking of "any domesticated animal" larceny, intended that the words used should not be given their ordinary literal meaning, and should not include an unlicensed as well as a licensed dog as a subject of larceny. Under this interpretation, it is true that, on a prosecution under the statute which makes the felonious taking of any domestic animal larceny, one found guilty of so taking a valuable unlicensed dog might receive a greater penalty than if he had stolen an equally valuable licensed and collared dog and was convicted under the statute which makes the theft of such a dog a specific offence punishable by a specific penalty. There is nothing inconsistent in the manifested purposes of the Legislature, under the statute last passed (St. 1906, c. 181), to make the felonious taking of any dog licensed or unlicensed, collared or uncollared, the crime of larceny, and, under the earlier statute (St. 1859, c. 225) as an adjunct to the licensing system, to make the theft of any dog, valuable or valueless, belonging to an owner who had in all respects conformed to the statute, a specific crime differing in respect to proof and to penalty from the crime of larceny under the general larceny statute. There was no error in the ruling of the judge that the fact that the dog was unlicensed was of no consequence and immaterial or in his refusal to direct a verdict for the defendant.

*Exceptions overruled.*