THE CITY OF ROLLING MEADOWS, Plaintiff-Appellee, v. AUDREY KYLE, Defendant-Appellant.

First District (3rd Division)   No. 84—1290

Opinion filed June 4, 1986.

WHITE, J., dissenting.

Kenneth D. Ross, and Susan M. Kornfield, both of Chicago, for appellant.

John R. Rafferty, of Chicago, for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, city of Rolling Meadows, brought an action against defendant, Audrey Kyle, for keeping an undomesticated animal, a monkey, in her home in violation of a city ordinance. Following an evidentiary hearing, the court entered judgment in favor of plaintiff. Defendant subsequently filed a motion to vacate the judgment and a motion for a new trial. The trial court denied both motions. Defendant appeals. We reverse.

The monkey in question here, Yondi, has resided with defendant and her husband since she was two days old. At the time this suit was commenced, Yondi and the Kyles had been living in Rolling Meadows for the preceding seven years. The citation issued by the city of Rolling Meadows charged defendant with violating a municipal ordinance which provides:

"Keeping animals other than domesticated pets.

No person, firm or corporation shall own or keep within the city any bees, goats, sheep, hogs, cattle, fowl, reptile or serpent, spider, or other animal normally wild, dangerous to human life or carnivorous in nature, other than domesticated house pets,

and each day such animal is kept in violation of this Section shall constitute a separate and distinct offense. The word "fowl" shall include chickens, turkeys, geese, and ducks. It is no defense to a violation of this Section that the owner or keeper of any animal or reptile which is prohibited in this Section has attempted to domesticate such animal or reptile." Rolling Meadows Ordinance section 4—28 (1981).

Defendant and her husband testified extensively regarding the domesticity of Yondi and the commonly understood meaning of the words "domesticated house pets." The city presented no evidence indicating its definition of "domesticated house pets." The court found defendant to be in violation of Ordinance 4—28 for keeping Yondi as a pet. Subsequently, an order of supervision was entered by the court allowing defendant time to remove Yondi from the city limits and in so doing exonerate herself of the ordinance violation.

Defendant filed a motion for a new trial. Following a hearing, the motion was denied. The court rendered a written opinion regarding its interpretation of Ordinance 4—28. The court essentially determined that (1) a monkey is an animal normally wild and incapable of being domesticated or defined as a domesticated house pet, (2) the phrase "other than domesticated house pets" refers to cats and dogs, and (3) taken as a whole, Ordinance 4—28 bars the keeping of monkeys within the city limits.

At issue here is the construction and application to be given the phrase "other than domesticated house pets" as set forth in Ordinance 4—28. Defendant contends that contrary to the trial court's ruling, proper statutory construction of Ordinance 4—28 requires that (1) the phrase "other than domesticated house pets" be construed to modify the preceding phrase "or other animal normally wild, dangerous to human life or carnivorous in nature" in order to allow even cats or dogs to be kept as pets within the city, and (2) the phrase "domesticated house pets" be defined according to its commonly understood meaning. Defendant further contends that it is a question of fact in each case whether or not an animal normally wild, dangerous to human life or carnivorous in nature has been domesticated within the meaning of the ordinance.

■■ ■ We first address defendant's argument that proper statutory construction of Ordinance 4—28 requires a finding that the phrase "other than domesticated house pets" modifies the preceding phrase "or other animal normally wild, dangerous to human life or carnivorous in nature." The fundamental role of a court in constructing a statute is to ascertain the intent of the legislature and effectuate it accord-

ingly. To determine legislative intent, the court will examine the entire statute and attempt to identify both the statutory objective and the problem sought to be eliminated. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313, 1315.) The court must also choose a construction which gives the statute a clear and logical meaning rather than a meaning which renders it illogical, useless, or unreasonable. (*People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 604, 467 N.E.2d 1098, 1102, citing *Havlik v. Marcin* (1971), 132 Ill. App. 2d 532, 270 N.E.2d 189; 2A A. Sutherland, Statutory Construction sec. 45.12 (4th ed. Rev. 1984).) Neither defendant nor the city disagrees with these general principles of law and their applicability to Ordinance 4—28.

■ The parties further agree with the basic rule of statutory construction that relative or qualifying words, phrases or clauses are to be applied to the words or phrases immediately preceding and are not to extend to or include other words, phrases or clauses more remote unless after examining the entire statute it appears that such an extension is required. (*City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 375, 385 N.E.2d 687, 688-89; *People v. Thomas* (1970), 45 Ill. 2d 68, 72, 256 N.E.2d 794, 796.) However, the parties dispute the appropriate application of this general principle to the phrases "other than domesticated house pets" and "or other animal normally wild, dangerous to human life or carnivorous in nature." Defendant argues that the latter phrase modifies the former. The city contends that the latter phrase is not a modifying phrase.

■ We believe that the drafters of Ordinance 4—28 intended the phrase "other than domesticated house pets" to modify the entire preceding phrase "or other animal normally wild, dangerous to human life or carnivorous in nature." Were we to follow the city's argument that "domestic house pets" modifies nothing and refers only to dogs and cats, Ordinance 4—28 would prohibit residents from keeping all other animals normally wild, dangerous to human life or carnivorous in nature, including such commonly kept house pets as birds, gerbils, hamsters, mice, rabbits, guinea pigs, tropical fish and turtles.

Furthermore, adoption of the city's interpretation of Ordinance 4—28 would ban any pet store located within the city of Rolling Meadows from selling any animals other than cats and dogs. We do not believe that the drafters of Ordinance 4—28 intended the Ordinance to be construed in such a restrictive manner, since such a construction would be neither logical, useful nor reasonable. See *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 604, 467 N.E.2d 1098, 1102, citing *People v. Havlik* (1971), 132 Ill. App. 2d 532, 270 N.E.2d 189; 2A A. Sutherland,

Statutory Construction sec. 45.12 (4th ed. Rev. 1984).

Having determined that the phrase "other than domesticated house pets" modifies the phrase "or other animal normally wild, dangerous to human life or carnivorous in nature," we must next consider defendant's argument that the phrase "domesticated house pets" should be defined according to its commonly understood meaning.

■ Here, the word domesticated, as referring to house pet, has not been defined by the drafters. When a term of a statute is not defined by the legislature, courts are to presume that the term was intended to have its ordinary and popularly understood meaning absent legislative intent to the contrary. (See *Herbert v. Board of Fire & Police Commissioners* (1981), 97 Ill. App. 3d 1138, 1139, 423 N.E.2d 1298, 1300; see also *People v. Hicks* (1984), 101 Ill. 2d 366, 371, 462 N.E.2d 473, 475.) The legislature is presumed not to intend unjust, absurd or unreasonable consequences. (See *Herbert v. Board of Fire & Police Commissioners* (1981), 97 Ill. App. 3d 1138, 1141, 423 N.E.2d 1298, 1301.) Ordinance 4–28 lacks a legislative history to aid us in our interpretation of the meaning of the term domesticated, and the record shows that the city presented no evidence regarding the drafter's intended definition of the term. Consequently, we are required to adopt the common and approved usage of the term domesticated. See *Commonwealth v. Flynn* (1934), 285 Mass. 136, 139, 188 N.E. 627, 629.

■ In view of our determination that the phrase "other than domesticated house pets" modifies the phrase "or other animal normally wild, dangerous to human life or carnivorous in nature," we must reject the trial court's definition of domesticated house pets as being limited to cats and dogs. Moreover, in ordinary usage, and as defined by both legal and standard dictionaries, the word domestic or domesticated is descriptive of the word animals, these terms connote an animal wild by nature which has been so reclaimed as to become tame, under the dominion and control of its owner, associated with family life or accustomed to living in or near the habitations of men. (See *Commonwealth v. Flynn* (1934), 285 Mass. 136, 139, 188 N.E. 627, 629; see also Ballentine's Law Dictionary 368 (3d ed. 1969); Black's Law Dictionary 434 (5th ed. 1979); 4 Am. Jur. 2d, *Animals* sec. 1 (1962); Webster's Third New International Dictionary 671 (1971).) Absent evidence to the contrary, we believe that the drafters of Ordinance 4–28 intended to adopt these common meanings of the term domesticated house pets. Any other interpretation would be inconsistent with case law, the rules regarding statutory construction, and common understanding and usage of the English language.

■ In her remaining argument, defendant contends that it is a

question of fact in each case whether or not an animal normally wild, dangerous to human life, or carnivorous in nature has been domesticated within the meaning of Ordinance 4—28. Defendant therefore argues that the trial court erred in deciding that as a matter of law, a normally wild animal, such as a monkey, cannot be domesticated. We agree with defendant.

Our interpretation of the language of Ordinance 4—28 requires a trial court to first determine whether an animal in question is normally wild, dangerous to human life, or carnivorous in nature, and then to determine whether the animal is domesticated. Application of the commonly understood definition of the term domesticated house pet to an individual animal necessarily involves a factual determination. While we recognize that a monkey is an animal normally wild, we do not believe that such a classification is dispositive of the question of domesticity in all cases. Rather, it is clear that Illinois recognizes that animals wild by nature may be domesticated. See Ill. Rev. Stat. 1983, ch. 8, par. 24; *Ulery v. Jones* (1876), 81 Ill. 403.

■ Here, the evidence shows that Yondi is a lesser spotted white nose quenon monkey, registered as an endangered species pursuant to the Endangered Species Act (16 U.S.C. sec. 1531 *et seq.* (1982)), born in captivity in Kenya, Africa, and raised by defendant since the age of two days. Yondi is now approximately 15 years old and weighs six pounds. The uncontroverted evidence is that Yondi makes intelligent communications through a variety of vocalizations and gestures, and that she is toilet trained. She receives the same inoculations and vaccinations as a child, including tuberculosis, polio, diptheria and booster shots. Yondi has accompanied defendant and her husband on trips to Europe, Asia, Africa and Latin America. The record also shows that Yondi is a highly sociable animal and interacts equally well with people and animals. Moreover, the record is devoid of any evidence that Yondi poses a danger to the community.

Under the circumstances, we conclude that the evidence presented to the trial court concerning the proper interpretation of the term "domesticated house pet" and its application to Yondi establishes as a matter of law that Yondi is a domesticated animal. The trial court erred in finding defendant in violation of Ordinance 4—28.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

McGILLICUDDY, J., concurs.

JUSTICE WHITE, dissenting:

I would hold that the city of Rolling Meadows ordinance forbids keeping within the city as an "animal normally wild," and that Yondi, a monkey, is such an animal. Keeping Yondi within the city is therefore a violation of the ordinance. The majority states that the record "shows that Yondi is a highly sociable animal," but Yondi is still a monkey, and in the words of the ordinance, "It is no defense to a violation of this section that the owner *** has attempted to domesticate such animal."

I would affirm the judgment of the trial court.