THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* GREGORY W. BAISE, Secretary of the Department of Transportation, Plaintiff-Appellee, v. MERLIN HARRIS *et al.*, Defendants-Appellants.

Fourth District No. 4—88—0409

Opinion filed December 30, 1988.—Rehearing denied January 31, 1989.

Donald I. Wilber, of Colfax, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff, the Illinois Department of Transportation (Department), filed a complaint for injunctive relief against the defendants, Merlin and Eilene Harris, in the circuit court of McLean County. The complaint alleged that the defendants violated section 23 of "An Act in relation to the regulation of the rivers, lakes and streams of the State of Illinois" (Act) (Ill. Rev. Stat. 1985, ch. 19, par. 70), by constructing a stream enclosure on their property without approval or a permit from the Department. Following a hearing, the circuit court issued an order of mandatory injunction, compelling the defendants to remove the stream enclosure and restore the stream and overbank area to its original condition. Defendants now appeal.

For the following reasons, we affirm.

The salient facts are uncontested. Defendants Merlin and Eilene

Harris, husband and wife, are owners of a city lot located at 103 North Center Street in Colfax, Illinois. An unnamed tributary of the Mackinaw River flows through the defendants' property. The parties agree that this stream is located in an urban area and drains more than one square mile of land.

On August 28, 1985, the Department became aware that the defendants had installed pipe culverts in the stream on their property. On August 29, 1985, Dennis L. Kennedy, a professional engineer with the Department's Bureau of Resource Management, Division of Water Resources, spoke with Eilene Harris. Ms. Harris informed Kennedy that she and Mr. Harris were doing work in the stream, but she assured Kennedy that no additional work would be performed until the Department had conducted an inspection of the site.

On September 6, 1985, Kennedy and Mike Diedrichsen, also a professional engineer with the Department, inspected the defendants' construction pursuant to the duties of the Department as set forth in section 23 of the Act (Ill. Rev. Stat. 1985, ch. 19, par. 70). During the inspection, the defendants informed Kennedy and Diedrichsen that they intended to enclose the stream running through their property with tubes measuring five feet in diameter, which would be placed in the stream bed and covered with dirt. Following their inspection of the site, Kennedy and Diedrichsen advised Ms. Harris that it would be necessary for the Department to evaluate the project pursuant to section 23 of the Act (Ill. Rev. Stat. 1985, ch. 19, par. 70) to determine whether the project would exacerbate existing flood problems in the area. They asked Ms. Harris to do no additional filling along the stream until the Department had made a determination.

Kennedy sent a letter to the defendants dated September 17, 1985, informing them that the stream enclosure project came under the jurisdiction of the Department and as the project had not received authorization, the construction was in violation of the Act. He advised the defendants to do no further construction on the project unless and until authorization was granted by the Department. The defendants were further informed that in the Department's opinion, placement of fill material and/or the elevation of the yard with fill would likely create an obstruction to flood flows. Kennedy stated that due to the significant flooding problems which currently existed in the vicinity of the project, no additional construction could be allowed without a detailed engineering analysis demonstrating that the proposed enclosure would not result in additional flood damage to neighboring properties. Kennedy enclosed an application for a permit but indicated that in the Department's opinion, an engineering analysis of the project would

likely confirm that it would not be permissible.

Over the next several months, the defendants had a number of conversations with the Department about their proposed project and were repeatedly advised that little or no fill could be approved at the site due to existing flood problems in the area. In a letter dated October 21, 1985, Kennedy enclosed another permit application and again advised the defendants that any proposed fill should be kept to a minimum.

Then on October 28, 1985, the defendants submitted a permit application to the Department. The defendants signed the application as the applicants; however, the body of the document listed the City of Colfax as the applicant. Kennedy returned the application to the defendants in a letter dated November 7, 1985, and advised the defendants that they would have to submit a new application, correcting certain deficiencies. He also informed the defendants that they were required to submit surveyed cross-sections of specific locations and a complete set of project plans. Kennedy again indicated that no increase in water surface elevation would likely be permissible due to the sensitive nature of the area with regard to flooding.

The defendants failed to submit a new permit application for their stream enclosure project. Then on April 9, 1986, Kennedy inspected the defendants' property and found the entire backyard, including the channel around the culverts, had been filled with dirt and the project had been completed.

On January 22, 1987, the Department filed in the circuit court of McLean County a complaint for injunctive relief pursuant to section 23 of the Act. (Ill. Rev. Stat. 1987, ch. 19, par. 70.) The complaint alleged that the defendants failed to submit a proper application for their stream enclosure project and completed the project without a permit in violation of section 23. The complaint further alleged that the defendants' project would seriously aggravate the existing flood conditions at that location by increasing the frequency and depth of flood events. The Department sought a mandatory permanent injunction ordering the defendants to remove the stream enclosure and fill dirt from their property.

A hearing was held on September 17, 1987. In a written order filed October 19, 1987, the circuit court found, *inter alia*, that the stream running through the defendants' property was located in an urban area and drained more than one square mile of land. Further, the court found that the defendants failed to submit the necessary information to the Department concerning the stream enclosure project and completed the project, raising the elevation of their yard, without

a permit. The court determined that the stream enclosure created an obstruction to flood flows and an increase in flood flow levels which would result in overflow and damage to property near the area. The court ordered the defendants to remove the stream enclosure on their property and restore the stream to its original condition. A mandatory injunction was to become final after a hearing was conducted to determine the preproject conditions of the site.

The mandatory injunction order was issued on May 23, 1988, ordering the defendants to remove the stream enclosure and restore the stream and overbank to its original condition. This appeal followed.

Defendants argue on appeal that they were not required under the Act to obtain a permit from the Department before undertaking construction of the stream enclosure on their property. Defendants maintain that the proper statutory construction of sections 23 and 29a of the Act (Ill. Rev. Stat. 1985, ch. 19, pars. 70, 78), particularly the language underscored below, exempts them from the Act's permit requirements. Section 23 of the Act provides in pertinent part:

"It shall be the duty of the Department of Transportation to maintain stream gauge stations, and to make careful investigations of the streams of the State with reference to the carrying capacity of all such streams in times of flood and under normal conditions; to prevent the carrying capacity of streams to be limited and impaired by fills, deposits, obstructions, encroachments therein, deposit of debris or material of any kind, *** in or upon the bank of any waters and water courses or in such proximity to such waters and water courses or any tributary thereto where the same shall be liable to be washed into or deposited along such waters and water courses, either by normal or flood flows, as a result of storms or otherwise, which may in any manner impede or obstruct the natural flow of such waters and water courses, *** to an extent where the same cannot safely dispose of the flood waters which may naturally, lawfully, and properly be discharged therein ***. If the capacity of any stream is limited and impaired by reason of any of the Acts or construction in this Act provided, so as to constitute a menace to property along the course of said stream or safety of the people of the State, or results in damage, overflow, *** said Department of Transportation shall take such action as may be required, by injunction or otherwise, to prevent such encroachments or the erection of such structures, or compel the removal or modification of same ***. *It shall be unlawful for any person, persons, corporations, \*\*\* or other agency to make any*

*fill, deposit, or encroachment in \*\*\* a stream that has a drainage area of one square mile or more in urban areas or 10 square miles or more in rural areas, until plans, profiles and specifications and other data which may be required, have been first filed with the said Department of Transportation of this State and a written permit received therefor.* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 19, par. 70.)

Section 29a of the Act states as follows:

"After July 1, 1985, no person, State agency, or unit of local government shall undertake construction in a public body of water or in a stream without a permit from the Department of Transportation. *No permit shall be required in a stream which is not a public body of water, draining less than one square mile in an urban area or less than ten square miles in a rural area.* No permits shall be required for field tile systems, tile outlets structures, terraces, water and sediment control basins, grade stabilization structures, or grassed waterways which do not obstruct flood flows." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 19, par. 78.)

Defendants do not dispute that the stream in question is located in the urban area of Colfax or that the stream drains more than one square mile of land. Instead, defendants assert that under section 29a of the Act (Ill. Rev. Stat. 1985, ch. 19, par. 78) the Department was required to prove that the *drainage* was in an urban area.

The Department contends that while the defendants' reading of sections 23 and 29a may be one possible interpretation, the more useful and logical construction of those provisions would require a permit for construction if the stream drains more than one square mile and the *construction site* is located in an urban area. The Department asserts that the focal point for determining whether a permit is required under the Act is the situs of the proposed stream obstruction. The Department maintains that when the construction is located in an urban area, the public concerns to be protected by the Department are implicated because of the more extensive flood damage that would occur in an urban area rather than in a rural area. Thus, the Department argues that a more logical interpretation would require a permit when the proposed construction site is an urban area and the drainage is a least one square mile.

■ The fundamental role of a court in construing a statute is to ascertain the intent of the legislature and effectuate it accordingly. (*City of Rolling Meadows v. Kyle* (1986), 145 Ill. App. 3d 168, 494 N.E.2d 766.) To determine legislative intent, the court will examine

the entire statute and attempt to identify both the statutory objective and the problem sought to be eliminated. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) The court must also choose a construction which gives the statute a logical meaning rather than a meaning which would render it illogical, useless, or unreasonable. *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 467 N.E.2d 1098.

■ ■ Upon examination of the statutes in question and the legislative history with the foregoing principles in mind, we conclude that the defendants' proffered construction would neither be logical, useful, nor reasonable. The primary objective of sections 23 and 29a is that of flood control in urban areas. We believe section 23 was intended to regulate construction in streams in order to protect against flood damage to urban property. We further believe that section 29a was intended to exempt farmers from the Act's permit requirements for ordinary stream construction and drainage system maintenance that affects only rural areas. Hence, we interpret the provisions as requiring a permit when the location of the proposed stream construction and the extent of the stream drainage are such that the obstruction could create or exacerbate existing flood problems in urban areas. Accordingly, where, as here, the proposed construction is located in an urban area, the stream obstruction has the potential of exacerbating existing flood problems in an urban area, and the stream drainage is more than one square mile, a permit is required under the Act.

In view of our conclusion, we deem it unnecessary to address the Department's waiver argument.

For the reasons stated, the judgment of the circuit court of Mc-Lean County is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.