THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME RASEAITIS, a/k/a Jerome Rasgaitis, Defendant-Appellant.

First District (4th Division)   No. 82—262

Opinion filed August 9, 1984.

James J. Doherty, Public Defender, of Chicago (Fred S. Flores and Karen A. Popek, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ROMITI delivered the opinion of the court:

Defendant, Jerome Raseaitis, under indictment for murder and having been repeatedly found unfit to stand trial, was given a discharge hearing (pursuant to Ill. Rev. Stat. 1981, ch. 38, par. 104—25), at which the court found that the State had sustained its statutory burden of proving his "guilt" of murder beyond a reasonable doubt. Defendant was then ordered to undergo a maximum extended treatment period of five years with the Department of Mental Health and Developmental Disabilities (the Department). On appeal defendant contends: (1) the State failed to meet its statutory burden of proof; (2) the treatment period imposed was longer than the maximum permitted under the statute; (3) the statutory scheme under which defendant's treatment period was imposed is violative of his right to due process and the equal protection of the laws.

We affirm.

On December 1, 1975, the defendant was charged with the murder of Matti Griffin after having voluntarily appeared at a police station to confess to the commission of that crime, which had occurred on April 29, 1973. The defendant was subsequently found unfit for trial on March 9, 1976, and on several subsequent occasions, although the record also establishes that on several occasions mental health personnel had reached preliminary determinations that he had become fit. During this time the defendant was in the custody of the Department for treatment in accordance with section 5—2—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2.) While defendant was undergoing treatment, the fitness provisions of the Code were amended to afford criminal defendants found unfit for trial the right to demand a discharge hearing at which they could seek to establish their innocence. (Ill. Rev. Stat. 1981, ch. 38, par. 104—25.) Defendant requested such a hearing and on December 10, 1981, after a fitness hearing at which the court determined that defendant remained unfit for trial and would not be fit within one year, the discharge hearing was held.

At the discharge hearing the defendant pled not guilty and the State then proceeded with its presentation of evidence. It was stipulated that if called, Officer R. Olson would testify that on April 29, 1973, at 8:30 in the morning at the Planters Hotel at 19 North Clark in Chicago, he observed the partially clad body of a woman, known as Jerry Rice and Matti Griffin, lying on a fifth floor landing. A set of handcuffs was attached to her right wrist. The officer also observed a bedspread tied to a partially open window in apartment 807 of the hotel. The bedspread was hanging outside the window. It was also stipulated that, if called to testify, Dr. Radhakisnan, a pathologist with the Forensic Institute, would testify that he performed the autopsy on Griffin's body and determined that the cause of death was cerebral cranial injury, consistent with a fall from a high location.

The parties further stipulated that Officer Nowicki would testify that on November 30, 1975, the defendant appeared at the 17th District police station and indicated that he wished to confess to a crime. After being advised of his rights and waiving those rights, the defendant said, "I can't sleep nights since I killed her, I want to confess now." The defendant's written statement was then obtained. In that statement defendant said he was at the Planters Hotel at about 9 or 10 p.m. on April 29, 1973, with a black woman. He could not recall her height or weight. He had met her at 7 that night at Broadway and Wilson and went with her to the hotel to take LSD. He registered them under the names of Mr. and Mrs. Jerry Rice and they proceeded to an eighth floor room. At about 8 p.m. they both took LSD. Defendant then tied two or three bedsheets in knots and tied them to the window. He told the woman to jump out the window, threatening to stab her with a six-inch blade knife he had if she did not do so. He also attempted to stab her with the knife. She jumped out the window and hung on to the sheets for only a few minutes. The defendant admitted to having a set of toy handcuffs at the hotel that night but denied having handcuffed the victim. In the statement defendant said he was 21 years old and had an eighth-grade education. He denied being on drugs and stated that he had last used drugs a long time earlier. The parties stipulated that the investigator who took the statement would testify that the defendant signed each page of the statement and initialled it where errors were made.

After the presentation of this evidence, the defendant's counsel having rested without presenting any evidence, the court found that the defendant was "not not guilty" and imposed on him a maximum treatment period of five years with the Department of Mental Health and Developmental Disabilities.

## I

The discharge hearing statute provides that the defendant must be acquitted if the evidence presented at the hearing fails to establish defendant's guilt beyond a reasonable doubt. (Ill. Rev. Stat. 1983, ch. 38, par. 104–25; *People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.) Although a court's determination that the State has met this burden does not constitute a technical determination of guilt, that issue being deferred until the defendant is fit for trial (*People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64), the standard of proof is the same as that required for a criminal conviction. Defendant contends that the trial court erred when it found that the State had met this burden.

In this cause the State sought to meet its burden of proof with the use of defendant's confession. Because the same burden of proof is applicable in this case as in a criminal trial, we will apply the same standards with respect to the requirements for meeting that burden. For a conviction based on a confession to be sustained, the confession must be corroborated. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) In Illinois proof of the *corpus delicti* satisfies that corroboration requirement. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) And in a murder case the *corpus delicti* consists of two items, the fact of death and the fact that death was caused by the criminal agency of some person. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112; *People v. Holmes* (1977), 67 Ill. 2d 236, 367 N.E.2d 663.) In evaluating such evidence the test is then whether the whole evidence proves that a crime was committed and that the accused committed it. *People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258.

■ Based upon our review of the evidence presented at the discharge hearing we find that the State did meet its burden of proof. The defendant walked into a police station and admitted that he had killed the deceased by forcing her at knife-point to hang out of an eighth-floor window at the end of a bedsheet rope from which she fell to her death. Defendant stated that they checked into the Planters Hotel using the names of Mr. and Mrs. Jerry Rice. He admitted that he had with him some toy handcuffs, although he denied using them on the deceased. This confession was corroborated by the State's proof of the *corpus delicti*. The State proved that the body of the victim, who was known as Jerry Rice, had been found on the landing of the Planters Hotel on the day in question, although a later time than the confession of the defendant would have indicated. The pathologist who examined the body found her death to have been caused by a cerebral injury consistent with a fall from a high place. A bedspread

was found tied to the eighth-floor window of one of the hotel rooms, and a handcuff was attached to one of the victim's wrists. Thus, in addition to the defendant's confession, the State presented independent evidence establishing that a death had occurred by the same criminal agency described by defendant. Viewing all this evidence as a whole, we find that the court did not err in its finding.

## II

■ We next consider defendant's contention that the statute concerning extended treatment periods should be construed to permit a total maximum treatment period of five years for defendants accused of murder, so that the period of treatment he received since the effective date of the statute and prior to the discharge hearing should have been credited against the five-year treatment term imposed by the court.

The pertinent portions of section 104—25 provide:

> "(d) If the discharge hearing does not result in an acquittal of the charge the defendant may be remanded for further treatment and the one year time limit set forth in Section 104—23 shall be extended as follows:
>
> (1) If the most serious charge upon which the State sustained its burden of proof was a Class 1 or Class X felony, the treatment period may be extended up to a maximum treatment period of 2 years; if a Class 2, 3, or 4 felony, the treatment period may be extended up to a maximum of 15 months;
>
> (2) If the State sustained its burden of proof on a charge of murder, the treatment period may be extended up to a maximum treatment period of 5 years." (Ill. Rev. Stat. 1983, ch. 38, par. 104—25.)

In construing a statute it is the task of the court to choose a construction giving the statute a clear and logical meaning rather than one rendering its provisions illogical, useless, or unreasonable. (*Havlik v. Marcin* (1971), 132 Ill. App. 2d 532, 270 N.E.2d 189; 2A A. Sutherland, Statutory Construction sec. 45.12 (1973).) Adoption of defendant's construction would mean that in the case of one charged with a Class 2, 3 or 4 felony who had already been treated for a period of one year the court could only impose an additional treatment period of three months following a discharge hearing, even though such a hearing may be triggered by a finding that there is not a substantial probability that the defendant will attain fitness within one year. (Ill. Rev. Stat. 1983, ch. 38, par. 104—23.) Instead of such a construction we find it reasonable to assume that the legislature intended that the

court have the discretion to impose an additional treatment period as specified in the statute, 15 months in the case of persons charged with Class 2, 3 and 4 felonies, and five years for those charged with murder. Accordingly we construe the statute to permit the additional treatment period ordered for the defendant, without any credit required for previous periods of treatment.

## III

■ Defendant also contends that section 104—25(d) is unconstitutional as applied to him and others found unfit prior to December 28, 1979 (the effective date of the statutory scheme at issue), because such defendants are potentially subject to being held in the custody of the Department under criminal indictment for a longer period of time than those found unfit after that date. As we have construed the statute, those who have been found unfit for trial since the effective date of the statute and then not found innocent in a discharge hearing relating to a murder charge could have a previous one-year treatment period extended up to five additional years. But defendant notes that, in contrast to this outside limit of six years of treatment, those found unfit prior to the effective date of the statute could be required to undergo that five-year treatment period in addition to much greater treatment periods occurring prior to that date. Thus, in defendant's case he has been in the custody of the Department since March 1976, and his extended treatment period will not end until December 1986 as presently scheduled. He will then have been held for over four more years than he could have been held if he had first been found unfit after the statute's effective date. Defendant contends there is no rational basis for this potential disparity in treatment and thus the law as applied violates his right to equal protection of the laws.

The test of whether a statute is violative of the equal protection clause is whether the classification is rationally related to a legitimate governmental objective, with the burden on those challenging the law to prove that it is arbitrary and invalid. (*Garcia v. Tully* (1978), 72 Ill. 2d 1, 377 N.E.2d 10.) Here the overall governmental objective clearly was to establish a comprehensive scheme for dealing with criminal defendants who may be unfit for trial. One of the primary objectives of the new act was to insure that defendants who were found unfit, and for whom there was no substantial probability of attaining fitness, would not be indeterminately institutionalized. (Report, Governor's Commission for Revision of the Mental Health Code of Illinois 6 (1976).) The principal vehicle for achieving this objective is the discharge hearing, which, for defendants found unfit after the effective

date of the statute, would be held one year after the original finding if their unfitness persisted or upon a finding that the defendant was not likely to become fit within one year. (Ill. Rev. Stat. 1983, ch. 38, par. 104—23.) The drafters of the statute were clearly concerned with the inclusion in this scheme of those found unfit prior to the effective date of the statute. Those who have been held by the Department for a period equal to the length of time they would have been required to serve for the crime at issue are entitled to an immediate fitness hearing. Those found unfit who have already been held by the Department for more than one year may immediately demand a discharge hearing. (Ill. Rev. Stat. 1983, ch. 38, par. 104—28.) Assuming the State meets its statutory burden of proof at that hearing the court may in its discretion order custodial treatment for an extended period of time, up to five years for murder. However, this extended period is not mandatory, just as it is not for those first found unfit after the effective date of the statute. Nothing in the statute prevents the trial court from determining that a lesser extended period, or none at all, is merited. Certainly one appropriate factor to be considered by the court would be the amount of time the defendant had previously been treated without success.

Defendant apparently would require that such prior treatment period be automatically credited. But this would strip the trial court of its discretion to impose any such extended period in many cases. In this cause the trial court would have been barred from ordering any extended treatment for the defendant despite evidence that on several prior occasions some experts had found that treatment had rendered him fit for trial. In our view this statutory scheme presents a reasoned approach to working with defendants found unfit under prior statutes. We need not find that the legislature's solution is the wisest or best one available for it to be constitutional. (*Garcia v. Tully* (1978), 72 Ill. 2d 1, 377 N.E.2d 10; *Schreiber v. County of Cook* (1944), 388 Ill. 297, 58 N.E.2d 40.) Because defendant has failed to demonstrate that the statutory scheme is arbitrary or unreasonable, we do not find any violation of equal protection.

## IV

■ Finally we consider defendant's contention that section 104—25 (Ill. Rev. Stat. 1983, ch. 38, par. 104—25) violates due process because it provides that the length of extended treatment periods may be based on the severity of the crimes at issue. Defendant contends that under the holding of *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, this is impermissible. We find that

defendant misconstrues the holding of that case. In *Jackson* the court held that Indiana violated the due process rights of the defendant, a mentally defective deaf mute charged with two robberies and found unfit for trial, when it sought to involuntarily commit him for an indefinite period of time despite a total lack of any evidence suggesting that he could ever be rendered fit for trial. The court stated:

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." (*Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.)

It is significant that under the Illinois statute defendants are subject to the extended treatment period only after a discharge hearing at which the State must meet its burden of, in effect, proving the defendant guilty beyond a reasonable doubt. Thus defendants are not being committed solely because they are not fit for trial. Nor, in the case of Raseaitis, are we confronted with an individual like the defendant in *Jackson* for whom it was apparent that no treatment would render him fit. The record establishes that this defendant has on several occasions during his period of treatment been determined by mental health experts to be fit, only to be subsequently found unfit at the ensuing fitness hearings. Additionally, the period of defendant's commitment is not indefinite. In the light of all these circumstances we find it reasonable for the statute to provide that increasing severity of the charges at issue permits increased treatment periods. Nothing in the statute prevents the trial court from imposing less than the maximum treatment period when it appears that a lesser period may suffice. But giving the judge the discretion to so increase the period depending on the severity of the charges provides a balance between the interests of the defendant and society's interest in protecting itself from those who commit crimes against it. Report, Governor's Commission for Revision of the Mental Health Code of Illinois 186 (1976).

608

The due process clause requires only that a statute be reasonably designed to accomplish constitutionally permissible objectives. (*People v. Burton* (1981), 100 Ill. App. 3d 1021, 427 N.E.2d 625; *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 425 N.E.2d 522.) We conclude that this statute provides a reasonable means of balancing and protecting the interests of the criminal defendant found unfit for trial and those of society.

The judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.