THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES POLACHEK, Defendant-Appellant.

First District (3rd Division)   No. 83—1183

Opinion filed October 24, 1984.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Donna B. More, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

In 1975 the defendant was charged by indictment with attempted murder and aggravated battery. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 12—4(a), 12—4(b)(1).) Subsequently, defendant was found unfit to stand trial and, consequently, was held by the Illinois Department of Mental Health and Developmental Disabilities (hereinafter DMHDD) as a mentally unfit criminal defendant awaiting trial until 1983. On April 13, 1983, the criminal charges against defendant were stricken with leave to reinstate. However, the trial court then remanded defendant to the custody of DMHDD pursuant to section 104—25(g)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(2)). Defendant appeals, contending that the continuing criminal jurisdiction over him by the criminal court under section 104—25(g)(2) violates the equal protection and due process clauses of the Federal and State constitutions.

On August 7, 1975, the trial court found defendant unfit to stand trial and, pursuant to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2), remanded him to the custody of the DMHDD for treatment. Pursuant to that provision, defendant's mental condition was reviewed on a regular basis throughout the remainder of the decade and, after such examinations,

it was determined that defendant continued to be unfit for trial. During this time, defendant remained in the custody of the DMHDD.

On March 10, 1981, defendant filed a petition for a discharge hearing pursuant to section 104—25 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1983, ch. 38, par. 104—25.) The hearing on that petition was held on March 31, 1981, and at that hearing the following testimony was introduced. John Agresto, one of the victims, testified that he observed defendant in front of his mother's residence on May 24, 1975. At that time defendant was dressed in a long overcoat, even though the weather was hot, and was holding his stomach and mumbling something about being hungry. The victim then went into his car to get several dollars for defendant. Suddenly, defendant pulled a knife from his overcoat and stabbed the victim in the chest. As a result of this attack, the victim was hospitalized for 2½ weeks and missed over three months of work. It was stipulated by the parties that Chicago police officers arrested defendant later that same evening. At that time, defendant warned the officers that they would have to kill him in order to take him into custody. After he was subdued, the police recovered a 12-inch butcher knife from defendant. It was also stipulated that if the other victim, William Fasnacht, were called to testify, he would state that on May 24, 1975, he observed defendant at 4707 North Damen Avenue in Chicago. At that time defendant asked him for money to buy beer. When this victim refused, defendant produced a knife and stabbed him in the shoulder. After hearing this testimony, the trial court found that the State had met its burden of proof on the two attempted murder counts. However, the court decided that defendant was still unfit for trial and remanded him to the DMHDD for two years of extended treatment pursuant to section 104—25(d)(1) of the Code of Criminal Procedure of 1963.

After the two years of extended treatment, defendant filed a petition for discharge on April 13, 1983. Defendant contended that he could no longer be held as an unfit defendant, and accordingly, the criminal charges against him had to be dismissed. At the hearing on that petition, the trial court dismissed the criminal charges against defendant with leave to reinstate.

After the dismissal, further proceedings were held to determine if defendant was subject to involuntary admission under the Mental Health and Developmental Disabilities Code. (Ill. Rev. Stat. 1983, ch. 91½, par. 1—100 et seq.) At those proceedings, Dr. Kaplan, a specialist in forensic psychiatry, testified that after he interviewed defendant, he came to the following conclusions:

"In my opinion he's subject to involuntary admission. I consider him a danger to other people. I also consider him unable to take care of himself. He's acutely psychotic, delusional, actively delusional. Actively hallucinating and his thinking is very confused. He was agitated and threatening."

After hearing Dr. Kaplan's testimony and observing defendant's behavior in court, the trial court determined that defendant was hallucinating most of the time and acted aggressively toward others. The trial court then ordered that defendant be involuntarily committed. Subsequently, the court remanded defendant to DMHDD pursuant to section 104—25(g)(2) of the Code of Criminal Procedure of 1963.

That section states as follows:

"(g) At the expiration of an extended period of treatment ordered pursuant to this Section.

\* \* \*

(2) If the defendant continues to be unfit to stand trial, the court shall determine whether he or she is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities or to the Department of Rehabilitation Services for further treatment and shall be treated in the same manner as a civilly committed patient for all purposes, *except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding.*" (Emphasis added.) Ill. Rev. Stat. 1983, ch. 38, par. 104—25(g)(2).

Under the aforesaid provision, a defendant who is still unfit for trial at the conclusion of his extended treatment and who has not demonstrated his innocence of the criminal charges at the section 104—25 discharge hearing can be civilly committed to DMHDD. The distinction between an individual who has been civilly committed pursuant to section 1—119 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 1—119) and a person committed pursuant to the Code of Criminal Procedure of 1963 is that the latter individual is subject to the criminal jurisdiction of the court for a period equal to the maximum sentence to which the individual would have been subject had he or she been convicted in a criminal proceeding.

Defendant contends that this continuing jurisdiction of the criminal court violates the equal protection and due process clauses of the Federal and Illinois constitutions.

■■■ In determining whether a statutory classification such as section 104—25(g)(2) violates the equal protection clause, a court must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. (*People v. McCabe* (1971), 49 Ill. 2d 338, 340, 275 N.E.2d 407.) A classification must be reasonable, not arbitrary; it must be grounded upon some difference having a fair and substantial relationship to the object of the legislation so that all persons similarly situated are treated alike. (*Reed v. Reed* (1971), 404 U.S. 71, 75-76, 30 L. Ed. 2d 225, 229, 92 S. Ct. 251, 254.) The equal protection clause does not deny the State the right to treat different classes of persons in different ways; rather, the clause requires equality between groups of persons similarly situated and does not require equality for dissimilar conduct. See *People v. La Pointe* (1981), 88 Ill. 2d 482, 500, 431 N.E.2d 344.

■ Moreover, it is well established that a statute will be deemed constitutional against a challenge based on the due process clause if the law is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. See *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029.

Defendant, citing *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, contends that section 104—25(g)(2) of the Code of Criminal Procedure of 1963 violates the equal protection clauses of the Federal and State constitutions because persons committed under that section are subject to the court's continuing criminal jurisdiction, whereas individuals civilly committed are not. Defendant also points out that he is no longer confined as a mentally unfit defendant awaiting trial in a pending criminal case.

In *Jackson*, the United States Supreme Court considered the constitutionality of an Indiana statute which provided that defendants found unfit to stand trial were to be held in a mental health facility indefinitely until the State Superintendent of Mental Health decided that they had regained their fitness. Under that statutory scheme, discharge was discretionary and would not occur until in the opinion of the Department the defendant became sane. In addition, the commitment standards where a defendant was found unfit to stand trial were more lenient than those standards used to evaluate the feebleminded or those qualifying for civil commitment. Also, the release

standards for an unfit defendant were more stringent than those for the other two categories. The United States Supreme Court held that the more lenient commitment standards and the more stringent release standards violated the equal protection clause of the fourteenth amendment. (406 U.S. 715, 723-30, 32 L. Ed. 2d 435, 442-46, 92 S. Ct. 1845, 1850-54.) The court stated that the pending criminal charges did not provide greater justification for different treatment, and therefore, such classification was improper. The court further held that, since the defendant was unlikely to be adjudged sane pursuant to the Indiana statutory standards, the indefinite commitment "until sane" violated the due process clause of the fourteenth amendment.

■ We are of the opinion that the holding in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, is not applicable to the present statute since there is a rational basis for allowing the continuing jurisdiction of the criminal court in certain instances. The difference, as opposed to a civil commitment, is that a primary reason for the present defendant's commitment is the criminal acts he perpetrated against the victims, as outlined above. We are not holding that defendant was found guilty of attempted murder pursuant to the section 104—25 discharge hearing. We merely point out that evidence of those offenses was a major part of the basis for the court's decision to remand defendant to the DMHDD for two years of extended treatment. It is well established that a determination of guilt is not made in a discharge hearing. (See *People v. Rink* (1983), 97 Ill. 2d 533, 543, 455 N.E.2d 64.) The discharge hearing is purely civil in nature and is confined to inquiry as to defendant's continuing illness and whether or not he is a danger to himself and others. However, since the evidence, which supports the trial court's finding that defendant is indeed dangerous to others, is direct evidence of a criminal offense, the continuing jurisdiction of the criminal court, which is imposed by section 104—25(g)(2), is not violative of the equal protection clauses of the Federal and Illinois constitutions. Moreover, we believe that the standards for commitment pursuant to section 104—25(g)(2) are exactly the same as the Mental Health and Developmental Disabilities Code's standards for commitment. The only difference is that the court exercising criminal jurisdiction has the final say in evaluating a defendant pursuant to those standards where it decides to dismiss the criminal charges against that defendant at the expiration of the extended period of treatment.

■ We also do not believe that this section is in violation of the due process clause of the Federal Constitution. The court retains criminal jurisdiction for a period of time equal to the maximum sen-

tence to which the defendant would have been subject had he been convicted in a criminal proceeding. Since the length of time of the court's jurisdiction is determined and reasonably related to the conduct complained of, we do not see any constitutional problems. In addition, during such time period defendant will be examined periodically in order to determine whether he is no longer subject to involuntary admission. The Indiana statute in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, provided for indefinite confinement until the defendant was adjudged to be sane. It is evident therefore that the time limitation contained in section 104—25(g)(2) of the Code of Criminal Procedure of 1963 is completely different from the Indiana commitment provision.

■ Defendant also contends that section 104—25(g)(2) of the Code of Criminal Procedure of 1963 undermines the objective of a definite period of commitment for unfit defendants and is consequently unconstitutional under article I, section 2, of the Illinois Constitution. Defendant maintains that where, as in the present case, a defendant has exceeded the extended treatment period of section 104—25(d)(1), the legislature has determined that such defendant will not be triable within the foreseeable future, and therefore, should be civilly committed. Defendant argues that the continuing criminal jurisdiction goes counter to this legislative policy, and accordingly violates due process of law. Defendant further maintains that a criminal court should not be allowed to veto a possible determination by a court exercising civil jurisdiction that he could be released pursuant to the standards of the Mental Health and Developmental Disabilities Code. Defendant argues that this fact deprives him of the rights he would have had if he were governed by the release procedures of the Mental Health and Developmental Disabilities Code.

As we stated above, the same standards for commitment will be used by the court exercising its criminal jurisdiction, pursuant to section 104—25(g)(2), as would be used by a court exercising civil jurisdiction in determining whether or not an individual is subject to involuntary admission pursuant to the Mental Health and Developmental Disabilities Code. In addition, as stated before, criminal jurisdiction is limited to a time period equal to the maximum sentence to which defendant would have been subject had he been convicted in a criminal proceeding. After the time period equal to the maximum sentence has expired, criminal jurisdiction lapses. Consequently, since the legislature has placed definite time limits on the criminal court's jurisdiction under section 104—25(g)(2) of the Code of Criminal Procedure of 1963, we must conclude that this section does not violate due pro-

cess of law under the Illinois Constitution.

The judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.