ADRIEN YIADOM, by and on behalf of J.P. Clark, Relator, v. ANN KILEY, Director of the Department of Mental Health and Development Disabilities, *et al.*, Respondents-Appellees (Cecil A. Partee, State's Attorney of Cook County, Intervenor-Appellee).

First District (2nd Division)   Nos. 1—88—1620, 1—89—1734 cons.

Opinion filed September 28, 1990.

Mark J. Heyrman, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Shauna L. Boliker, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Adrien Yiadom (petitioner) brought petitions for *habeas corpus* in 1988 and 1989 on behalf of J.P. Clarke (relator), seeking orders commanding his release from the custody of respondents, the Directors of the Illinois Department of Mental Health and Developmental Disabilities (DMHDD), and the facility director of the Elgin Mental Health Center (Elgin). Upon the motions of the State's Attorney of Cook County (intervenor), the circuit court, in separate proceedings, dismissed both petitions. Petitioner's appeals from these rulings were consolidated for review. We must decide whether: appeal No. 1—88—

1620 was rendered moot by subsequent events; the circuit court properly dismissed the 1988 *habeas corpus* petition for its failure to state a claim for relief; the 1988 petition sufficiently alleged facts entitling relator to treatment in the least physically restrictive environment; relator alternatively was entitled to a hearing to determine if his present confinement was the least restrictive setting therapeutically appropriate and consistent with his treatment plan; and in the consolidated appeal, the circuit court properly dismissed the 1989 petition for *habeas corpus*.

On October 30, 1985, relator was arrested and charged with attempted murder and aggravated battery. Two days later, while in jail awaiting trial, relator suffered an intracranial hemorrhage, or stroke. On April 9, 1986, pursuant to the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 104—16), the circuit court found relator unfit to stand trial and placed him in custody of DMHDD for treatment. The court also found there was no substantial probability that relator would attain fitness to stand trial within one year.

On May 19, 1986, the court conducted a discharge hearing for relator as mandated by statute (Ill. Rev. Stat. 1985, ch. 38, par. 104—25) and determined the State sustained its burden of proof with respect to the attempted murder charge. The court found that a judgment of acquittal was not warranted. (Ill. Rev. Stat. 1985, ch. 38, par. 104—25(d)(1) (section 104—25(d)(1)).) Relator was remanded to the custody of DMHDD for further treatment. The initial one-year treatment period commencing April 9, 1986, and terminating April 8, 1987, was extended up to a maximum treatment period of two years, commencing April 9, 1987, and terminating April 8, 1989.

As part of the May 19, 1986, order, the court directed DMHDD to make periodic progress reports concerning relator's fitness, and required immediate notification if DMHDD at any time found relator fit. On June 16, 1986, a court order authorized placement of relator in a "non-secure setting" within DMHDD for medical treatment. Relator has remained in custody of DMHDD at Elgin since his commitment.

Petitioner commenced a *habeas corpus* action on February 3, 1988 (the 1988 petition), seeking release of relator from custody on three grounds: (1) pursuant to the Illinois *Habeas Corpus* Act (Ill. Rev. Stat. 1987, ch. 110, par. 10—124), the consequent determination that relator would never attain fitness constituted a "subsequent event" that rendered his continued confinement unlawful; (2) relator was entitled to release and transfer to the least physically restrictive environment pursuant to the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 104—17(a)) and the Mental Health and Developmental Disabil-

ities Code (Mental Health Code) (Ill. Rev. Stat. 1987, ch. 91½, pars. 2—102(a), 3—811); and (3) alternatively, relator had not been afforded a hearing consistent with the requirements of procedural due process, and he was entitled to be released unless a hearing was held to ascertain whether his current confinement was the least physically restrictive environment therapeutically appropriate and consistent with the treatment plan.

Intervenor filed a return to the 1988 petition, denying that a subsequent event occurred entitling petitioner to be discharged. Respondents also filed a return to the 1988 petition, stating relator was lawfully in its custody, hospitalized in a nonsecure setting at Elgin, and being treated in the least restrictive DMHDD environment appropriate to his needs.

On March 10, 1988, intervenor filed a motion to dismiss the petition for failure to state a claim, alleging that there was no subsequent act, omission, or event which entitled relator to discharge under the Illinois *Habeas Corpus* Act.

Petitioner cross-filed a motion for partial summary judgment, requesting relator be released from DMHDD custody unless civilly committed. She alleged the following as uncontested issues of fact: (1) relator was confined at Elgin; (2) the sole basis for that confinement was relator's commitment under the Code of Criminal Procedure; (3) the sole predicate for relator's commitment was the court's finding that relator was unfit to stand trial and unlikely to attain fitness within one year; and (4) though relator's original detention was lawful, respondents determined that there was not a substantial probability relator would regain fitness to stand trial in the foreseeable future. This last allegation, which petitioner characterized as the subsequent event entitling relator to release, was supported by the affidavit of Dr. Garth Smith, a psychiatrist at Elgin.[1]

The court dismissed the 1988 *habeas corpus* petition on May 12, 1988, finding as follows: relator was not being unlawfully held or denied his liberty at Elgin; relator's original detention was lawful; no facts were set forth in the 1988 petition showing that relator was entitled to discharge; the determination that relator would never regain fitness was insufficient to fall within the purview of the *Habeas Corpus* Act; the hearings afforded petitioner by DMHDD met due process

---

[1]According to the social assessment prepared at Elgin, relator is partially paralyzed and remains confined to a wheelchair because of his unsteady gait and general physical incapacity. He also suffers from an absence of recent memory, seizures and dementia.

requirements; relator was not entitled to discharge under the Mental Health Code; his treatment plan fell within the purview of "least restrictive environment", and he was not entitled to a further hearing on the matter; and, in accordance with the previous order, relator was not to be released until April 8, 1989, when a further hearing would be commenced to determine his future need for treatment. Petitioner challenges this ruling in appeal No. 1—88—1620 (the first appeal.)

During the pendency of the first appeal, relator's two-year extended treatment period expired, and on January 25, 1989, a further hearing was held as required by statute. (Ill. Rev. Stat. 1987, ch. 38, par. 104—25(g)(2) (section 104—25(g)(2)).) The circuit court found relator continued to be unfit to stand trial, was unlikely to become fit in the near future, and was subject to involuntary admission. The court remanded relator to the custody of DMHDD, but indicated placement in a secured setting was not required. The court by order retained jurisdiction over relator for a maximum period of 30 years, or until October 30, 2015.

On March 30, 1989, petitioner filed another petition for *habeas corpus* on behalf of relator (the 1989 petition), alleging he was entitled to a discharge on two grounds: (1) respondents failed to file a petition for commitment with 60 days as required by the Mental Health Code, rendering relator's continued confinement unlawful; and (2) the failure to provide a hearing 60 days after the initial commitment violated relator's due process and equal protection rights. Intervenor's return asserted that no subsequent act, omission, or event occurred entitling relator to a discharge.

Petitioner subsequently moved for summary judgment on the 1989 petition. After argument on June 13, 1989, the circuit court denied petitioner's motion for summary judgment and dismissed the 1989 petition. She challenges this ruling in appeal No. 1—89—1734 (the consolidated appeal).

I

A threshold issue to be resolved is whether the first appeal has been rendered moot by subsequent events. Involved here is the extended treatment period imposed on relator pursuant to section 104—25(d)(1), which has now expired.[2]

■ Generally, the mootness doctrine is not applicable to mental health cases (*In re Garcia* (1978), 59 Ill. App. 3d 500, 503, 375

---

[2]Relator currently is committed pursuant to section 104—25(g)(2) (Ill. Rev. Stat. 1987, ch. 38, par.104—25(g)(2)), which is the subject of the consolidated appeal.

N.E.2d 557) and should not be imposed where it would preclude issues capable of repetition from ever being reviewed on appeal. (*People v. Nunn* (1982), 108 Ill. App. 3d 169, 172-73, 438 N.E.2d 1342.) Otherwise, dismissal for mootness of orders involving commitment periods of short duration might remove an entire class of cases from appellate review. See *In re Wathan* (1982), 104 Ill. App. 3d 64, 432 N.E.2d 670.

■ Here, a two-year commitment period has expired well before appellate review. Under section 104—25(d)(1), extended treatment periods may be as short as 15 months, and perhaps less, since that period is the stated "maximum" for certain classes of felonies. (Ill. Rev. Stat. 1987, ch. 38, par. 104—25(d)(1).) Consequently, orders for commitment under this section normally will expire before appellate review, thereby invoking the mootness doctrine. Since dismissal for mootness would eliminate appellate review in this class of cases, that doctrine must be held inapplicable here. (See *In re Wathan*, 104 Ill. App. 3d at 65-66.) This court will consider the first appeal.

## II

■ Petitioner first contends the circuit court erred in denying partial summary judgment on the 1988 petition and in granting intervenor's motion to dismiss. The Illinois *Habeas Corpus* Act requires that a prisoner be discharged from custody where, though the original imprisonment was lawful, some subsequent act, omission or event takes place entitling him to be discharged. (Ill. Rev. Stat. 1987, ch. 110, par. 10—124(2).) Petitioner characterizes as a subsequent event the finding that relator would never regain fitness, and claims he was entitled to be discharged as a matter of law pursuant to the United States Supreme Court decision in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (*Jackson*).

In *Jackson*, the petitioner was a "mentally defective deaf mute" charged with two crimes and found unfit to stand trial. Under Indiana statute, unfit defendants were to be held indefinitely in a mental health facility until they were found to have regained their fitness. Discharge of such a defendant was discretionary and would not occur unless he was certified as "sane." No evidence suggested the petitioner in *Jackson* could ever be rendered fit for trial, however. Finding that these circumstances rendered the petitioner's commitment "permanent in practical effect," the *Jackson* court held that Indiana's indefinite commitment of petitioner solely on the basis of his incompetency to stand trial was a violation of his due process rights. (406 U.S. at 727, 731-39, 32 L. Ed. 2d at 444, 447-51, 92 S. Ct. at 1852, 1854-58.) It explained in pertinent part:

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." 406 U.S. at 738, 32 L. Ed. 2d at 451, 92 S. Ct. at 1858.

Contrary to petitioner's conclusion, however, *Jackson* does not automatically entitle relator to release in the instant case. In *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 607, 467 N.E.2d 1098, the court contrasted the Indiana statute at issue in *Jackson* with the Illinois statute, and concluded:

"It is significant that under the Illinois statute defendants are subject to the extended treatment period only after a discharge hearing at which the State must meet its burden of, in effect, proving the defendant guilty beyond a reasonable doubt. Thus defendants are not being committed solely because they are not fit for trial."

Here, the order remanding relator to the custody of DMHDD for the extended period of treatment (pursuant to Ill. Rev. Stat. 1985, ch. 38, par. 104—25) explicitly stated it was "based upon the discharge hearing," wherein the court had determined the State sustained its burden of proof and that a judgment of acquittal was not warranted. Unlike *Jackson*, therefore, the finding that relator was unfit to stand trial was not the sole basis for his commitment.

Further, the period of relator's commitment under section 104—25(d) was definite. The *Jackson* court was concerned that the petitioner's commitment was tantamount to a life sentence without his having been convicted of a crime; here, relator's extended treatment period was limited to a maximum of two years, in compliance with section 104—25(d). One of the primary objectives of the fitness provisions in the Code of Criminal Procedure is to ensure that defendants who were found unfit to stand trial and substantially unlikely to regain fitness would not be institutionalized indeterminately. (*People v. Raseaitis*, 126 Ill. App. 3d at 605, citing Report, Governor's Commission for Revision of the Mental Health Code of Illinois 6 (1976).) The indefinite period of

commitment found violative of due process in *Jackson* is absent in the instant case.

Relator's confinement was secured in careful compliance with Illinois statutory framework, which sufficiently addresses the due process concerns raised in *Jackson*.[3] (See *People v. Polachek* (1984), 128 Ill. App. 3d 200, 205-06, 470 N.E.2d 584; *People v. Raseaitis*, 126 Ill. App. 3d 600.) In contradistinction to *Jackson*, relator was not committed solely because of his unfitness, his status was to be monitored periodically by the court, and the extended treatment period was definite. *Jackson* therefore does not compel relator's discharge as a matter of law.

### III

Petitioner next maintains the 1988 petition sufficiently alleged facts under the Code of Criminal Procedure and the Mental Health Code entitling relator to conditional release so he could be treated in the least physically restrictive environment. In essence, petitioner asserts that because relator no longer is dangerous to himself or others due to his "progressive functional deterioration," a subsequent event has occurred entitling him to be discharged.

■ Assuming, *arguendo*, relator no longer is a danger to himself or others, that fact does not entitle him to release from DMHDD custody. The primary basis for an extended commitment period under section 104—25(d) is the evidence of criminal acts or offenses adduced at the discharge hearing. (*People v. McBrien* (1986), 144 Ill. App. 3d 489, 493, 494 N.E.2d 732.) As previously noted, relator was remanded for an extended period of treatment because the court found him unfit to stand trial and, in the subsequent discharge hearing, not subject to acquittal on the attempted murder charge. Since relator's danger to himself and others did not constitute the basis for his commitment, the evanescence of that single factor cannot be considered a subsequent event for purposes of *habeas corpus* action. The circuit court therefore did not err in dismissing this portion of the 1988 petition.

### IV

Petitioner alternatively contends that the 1988 petition established relator's right to a hearing on his eligibility for treatment in the least physically restrictive environment. She claims that, at the least, due pro-

---

[3]We reject petitioner's further argument that relator's confinement was not reasonably related to legitimate purposes. Section 104—25(d) balances the interests of a criminal defendant found unfit to stand trial with society's interest in protecting itself from persons who commit crimes against it, and is reasonably designed to accomplish constitutionally permissible objectives. *People v. Raseaitis*, 126 Ill. App. 3d at 607-08.

ess required that relator be given an opportunity to be heard.

■ Criminal defendants adjudged unfit to stand trial have a State-created liberty interest in treatment in the least physically restrictive environment, which requires the State to abide by the requirements of procedural due process. (*Johnson by Johnson v. Brelje* (7th Cir. 1983), 701 F.2d 1201, 1205.) Fundamental due process requires a meaningful and timely opportunity to be heard. *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32, 96 S. Ct. 893, 902.

■ In the instant case, petitioner's claim that relator has not been afforded a meaningful hearing concerning his treatment plan is contradicted by the record. Relator's placement was considered on the following occasions: a fitness hearing, in which the court decided to place relator in custody of DMHDD rather than on an outpatient basis (Ill. Rev. Stat. 1987, ch. 38, pars. 104—16, 104—17); a discharge hearing (Ill. Rev. Stat. 1987, ch. 38, par. 104—25); and a proceeding wherein the court ordered relator placed in a nonsecure setting. Any concerns regarding the propriety of relator's treatment plan presumably were raised at those proceedings, which afforded him a meaningful opportunity to be heard. Also, DMHDD was required by order to report periodically to the court regarding relator's progress toward fitness. As found by the circuit court, the hearings afforded relator by DMHDD satisfied due process.

■ Further, respondents stated in their return to the 1988 petition: "Relator is being treated in the least restrictive DMHDD environment appropriate to his mental and medical needs." The determination as to the appropriate placement for confinement of an unfit defendant is best left to DMHDD. (*In re Langdon* (1977), 53 Ill. App. 3d 768, 368 N.E.2d 1143.) Since the circuit court specifically considered the issue and held that relator's treatment fell "within the purview of 'least restrictive environment' pursuant to Illinois Statute," a further hearing on this matter is unnecessary.

## V

In the consolidated appeal, petitioner challenges the dismissal of her 1989 *habeas corpus* petition, which sought relator's release from involuntary commitment secured under section 104—25(g) of the Code of Criminal Procedure. That section provides, in pertinent part (Ill. Rev. Stat. 1987, ch. 38, par. 104—25(g)(2)):

"At the expiration of an extended period of treatment ordered pursuant to this Section:

\*\*\*

(2) If the defendant continues to be unfit to stand trial, the

court shall determine whether he or she is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to [DMHDD] \*\*\* for further treatment and *shall be treated in the same manner as a civilly committed patient for all purposes, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant,* for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." (Emphasis added.)

Petitioner maintains a person committed pursuant to section 104—25(g)(2) is entitled to the various procedural rights afforded by the Mental Health Code. According to section 3—813 therein (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813) (section 3—813), an initial order for involuntary admission under the Mental Health Code may not exceed 60 days; prior to the expiration of the initial order, if the facility director believes the patient continues to be subject to involuntary admission, a new petition with supporting documents may be filed with the court; if no new petition is filed prior to the expiration of the initial order, the patient shall be discharged; an additional treatment period may be ordered if the court, following a hearing, finds that the patient continues to be subject to involuntary admission. Petitioner suggests that the 60-day period specified in section 3—813 has expired without relator receiving a subsequent hearing, which she concludes constitutes an "omission" under the *Habeas Corpus* Act entitling relator to release.

■ Petitioner reasonably construes section 104—25(g)(2) as incorporating the procedures set forth in the Mental Health Code. A defendant remanded to DMHDD pursuant to that section is to be "treated in the same manner as a civilly committed patient for all purposes" with only two specified exceptions: (1) the defendant is subject to the criminal jurisdiction of the court for a period equal to the maximum sentence he might have received if convicted in a criminal proceeding (*People v. Polachek*, 128 Ill. App. 3d at 203); and (2) the defendant is to be placed in a secure setting unless the court determines such placement is unnecessary. Section 104—25(g)(2) nowhere excludes the periodic evaluations required by section 3—813. No preceding cases have explicitly considered the applicability of the Mental Health Code procedures to defendants committed under section 104—25(g)(2); nevertheless, several do suggest the only distinction between such persons and those civilly committed under the Mental Health Code is that the former individuals are subject to the aforementioned jurisdiction of the criminal court. See *People v.*

*Polachek*, 128 Ill. App. 3d at 203; see also *People v. McBrien*, 144 Ill. App. 3d at 493; *People v. Williams* (1986), 142 Ill. App. 3d 858, 863, 494 N.E.2d 525.

▮▮▮ Intervenor interprets the language "shall be treated in the same manner as a civilly committed patient for all purposes" as referring only to the treatment towards mental illness a defendant is to receive, and therefore not incorporating the procedural rights of the Mental Health Code. "Treatment," as defined in the Mental Health Code, means "an effort to accomplish an improvement in the mental condition or related behavior of a patient." (Ill. Rev. Stat. 1987, ch. 91½, par. 1—128.) The word "treated" is not specifically defined. If the legislature intended the narrow construction urged by intervenor, it would have used the word "treatment" instead of "treated" in the language at issue. Different results are presumed to be intended when the legislature uses certain words in one instance and different words in another. (*People v. Williams*, 142 Ill. App. 3d at 862.) That such a defendant is to be treated like a civilly committed patient "for all purposes" further belies the limited interpretation promulgated by intervenor. Statutory language must be accorded its plain and ordinary meaning, and a court is not free to restrict the plain meaning of an unambiguous statute. (*Ehredt v. Forest Hospital, Inc.* (1986), 142 Ill. App. 3d 1009, 1012, 492 N.E.2d 532.) The plain and ordinary meaning of section 104—25(g)(2) is that a defendant committed under its provisions must be treated like a civilly committed patient *for all purposes*, which includes his being afforded all procedural rights not expressly excluded.

Intervenor nevertheless insists that, if the legislature intended for defendants committed under section 104—25(g)(2) to receive all procedural rights of persons committed under the Mental Health Code, the statute would have mirrored the language set forth in section 104—23(b)(3).[4] (Ill. Rev. Stat. 1987, ch. 38, par. 104—23(b)(3).) Given the plain meaning of the statutory language, as described above, the additional language urged by intervenor would be superfluous.

▮▮ Intervenor's narrow interpretation of section 104—25(g)(2) also implicates the due process concerns raised in *Jackson*. If the statute is limited to simply requiring similar treatment services, it would fail to provide for periodic evaluation of relator's need for involuntary commitment, hearings on his progress, and other matters such as release proce-

---

[4]Section 104—23(b)(3) provides, in pertinent part, that a person committed to DMHDD under its provisions "shall be treated in the same manner as any other civilly committed patient for all purposes including admission, selection of the place of treatment and the treatment modalities, entitlement to rights and privileges, transfer, and discharge." Ill. Rev. Stat. 1987, ch. 38, par. 104—23(b)(3).

dures. Fundamental fairness inherent in the due process clause requires periodic evaluation of relator's fitness to stand trial. (See *People v. Lang* (1986), 113 Ill. 2d 407, 444, 498 N.E.2d 1105.) Correlatively, incorporating section 3—813 of the Mental Health Code into section 104—25(g)(2) would satisfy due process concerns by providing a procedure for periodic review of relator's need for involuntary commitment.

█ Under the facts set forth in the 1989 petition, and in accordance with the above discussion, relator was entitled to a hearing on his continued need for involuntary commitment or his discharge. Moreover, the allegation that relator's period of lawful confinement has expired is a proper basis for relief under the *Habeas Corpus* Act. (*Raimondo v. Kiley* (1988), 172 Ill. App. 3d 217, 227, 526 N.E.2d 457; *Raimondo v. Pavkovic* (1982), 107 Ill. App. 3d 226, 229, 437 N.E.2d 712.) The dismissal of the 1989 *habeas corpus* petition therefore was error.

█ Additionally, it is undisputed the initial 60-day period specified in section 3—813 of the Mental Health Code has expired without the required hearing. Relator therefore is entitled to his release unless civil commitment is sought. (*Cf. Kulak v. Belletire* (1986), 148 Ill. App. 3d 268, 498 N.E.2d 859; *In re Commitment of Guy* (1984), 126 Ill. App. 3d 267, 466 N.E.2d 1252.) We recognize that section 104—25(g)(2) requires the criminal court to approve relator's discharge (*People v. Williams*, 142 Ill. App. 3d at 863). A hearing is therefore necessary to ascertain relator's continued need for involuntary commitment. If the circuit court deems relator's discharge inappropriate, it can again remand him to custody of DMHDD pursuant to section 104—25(g)(2).

In light of the foregoing, the circuit court's dismissal of the 1988 petition for *habeas corpus*, the subject of appeal No. 1—88—1620, must be affirmed. The court's dismissal of the 1989 petition for *habeas corpus*, at issue in appeal No. 1—89—1734, must be reversed, and the cause remanded for further proceedings consistent with this opinion.

No. 1—88—1620, Affirmed.
No. 1—89—1734, Reversed and remanded.

DiVITO, P.J., and SCARIANO, J., concur.