THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME RASGAITIS, Defendant-Appellant.

First District (4th Division)   No. 1—87—3897

Opinion filed December 12, 1991.

Randolph N. Stone, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Veronica X. Calderon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Jerome Rasgaitis appeals from an order of the circuit court of Cook County that, pursuant to section 104—25(g) of the Code

of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)), found defendant to be subject to involuntary admission, remanded defendant to the Department of Mental Health and Developmental Disabilities (hereinafter Department of Mental Health) for further treatment for a period of 40 years, and subjected said treatment to the court's continuing supervision, including court approval of "such matters as conditional release or discharge of the defendant." On appeal, defendant contends that the circuit court's order was in error because the State failed to prove that he was subject to involuntary admission. Defendant also raises various challenges to the trial court's commitment of him for treatment for a period of 40 years. We reverse and remand.

The record reflects the following pertinent procedural history culminating in the circuit court order from which defendant appeals. Defendant was charged with the murder of Matti Griffin on December 1, 1975. He was found unfit for trial on March 9, 1976, and was held for treatment in accordance with section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2). During this time, the applicable provisions of the Code of Criminal Procedure were amended to provide for a modified procedure in the confinement of an accused found unfit to stand trial. See *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 476 N.E.2d 1098.

On December 10, 1981, pursuant to defendant's request, the court held a fitness hearing, under the new, amended provision to the Code of Criminal Procedure, wherein the court determined that defendant was not fit to stand trial and would not be fit within one year. (Ill. Rev. Stat. 1981, ch. 38, pars. 104—23(b), 104—28.) The trial court then held a discharge hearing to determine the sufficiency of the State's evidence to prove defendant guilty of the murder for which he was charged. (Ill. Rev. Stat. 1981, ch. 38, par. 104—25(a).) The court found that the defendant was "not guilty" of the murder and imposed a maximum treatment of five years with the Department of Mental Health. (Ill. Rev. Stat. 1981, ch. 38, par. 104—25(d).) Defendant appealed from this determination, which this court affirmed in *Raseaitis* (126 Ill. App. 3d 600).

At the expiration of the five-year treatment period, an additional hearing was held, pursuant to section 104—25(g) of the Code, on July 14, 1987. At this hearing, Dr. Gerson Kaplan, psychiatrist at the Psychiatric Institute of the circuit court of Cook County, testified that he examined defendant on June 16, 1987, and reviewed the defendant's medical, social, and psycho-social history. Dr. Kaplan determined that defendant had a history of mental illness, including psychosis. He

noted that during the examination, defendant said that he had been hearing voices for many years and continued to hear voices. Dr. Kaplan testified that defendant exhibited a rather flat affect, had poor eye contact, and that his appearance was messy and disheveled. Defendant's mental health records indicated that defendant participated very minimally in program activities and that he continued to be rather sloppy.

Dr. Kaplan testified that he considered defendant as currently psychotic and that he was currently unfit for trial and in need of hospital psychiatric care. He testified that he considered defendant a danger to other people and that defendant would be a threat to public safety if defendant were released into society. Dr. Kaplan stated that in his opinion defendant was subject to involuntary admission. He further testified that defendant's prognosis was poor and that defendant remained severely disturbed. Dr. Kaplan stated that defendant would probably continue to need hospital care for an indefinite period in the future.

The State presented no additional evidence at the hearing, and the defense offered no evidence for the court's consideration. The trial court determined that defendant continued to be unfit for trial and was subject to involuntary admission to the Department of Mental Health. The court also found that defendant was "a serious threat or danger to the public safety." The trial court entered an order reciting that, pursuant to section 104—25(g) of the Code of Criminal Procedure, defendant was "subject to involuntary admission and a serious threat to the public safety. Accordingly, the defendant is remanded to the [Department of Mental Health] for further treatment for a period of 40 years nunc pro tunc from July 14, 1987. Said treatment is subject to the court's supervision during the pendency of this 40 year order including court approval of such matters as conditional release or discharge of the defendant." Defendant's appeal followed.

Defendant argues that the State failed to prove that he was subject to involuntary admission, or a threat to the public safety, pursuant to section 104—25(g)(2). We disagree.

■ A person is subject to involuntary admission where he is mentally ill and, because of this disability, is either (1) "reasonably expected to inflict serious physical harm upon himself or another in the near future," or (2) "unable to provide for his basic physical needs so as to guard himself from serious harm." (Ill. Rev. Stat. 1989, ch. 91½, par. 1—119.) An order of involuntary admission is appropriate when the evidence reveals prior dangerous conduct in conjunction with evidence that the respondent remains in need of hospitalized

mental treatment. See, *e.g., In re Orr* (1988), 176 Ill. App. 3d 498, 531 N.E.2d 64; *In re Mazzara* (1985), 133 Ill. App. 3d 146, 478 N.E.2d 567.

■ In the instant cause, the record reveals that defendant confessed that he had murdered Matti Griffin. According to the testimony of Dr. Kaplan, defendant suffered from psychosis. Dr. Kaplan stated that, despite over a decade of medical treatment, defendant continued to be psychotic in need of psychiatric care. Dr. Kaplan also testified that defendant's prognosis is poor, and that he will need psychiatric care for an indefinite period of time. In light of all of these circumstances, we find sufficient evidence to support the trial court's determination that defendant was subject to involuntary admission and a threat to public safety. The cases cited by defendant are factually inapposite, since neither respondent in those decisions had been charged with a violent crime. *In re Cutsinger* (1989), 186 Ill. App. 3d 219, 542 N.E.2d 414; *In re Cochran* (1985), 139 Ill. App. 3d 198, 487 N.E.2d 389.

Although we find sufficient evidence to support the trial court's determination that defendant was subject to involuntary admission and a threat to public safety, we nevertheless conclude that the trial court erred in ordering that the period of defendant's treatment, to a maximum of 40 years, commenced upon the date of the court's hearing on July 14, 1987.

Both section 104—23 and section 104—25 consider a defendant's treatment period to commence upon a determination that the defendant is unfit to stand trial. (See Ill. Rev. Stat. 1989, ch. 38, pars. 104—23, 104—25.) Under section 104—23, if the trial court determines that the defendant will probably not be fit to stand trial *"within one year from the date of the original finding of unfitness, or if at the end of one year from that date* the court finds the defendant still unfit," the court is empowered to hold a discharge hearing pursuant to section 104—25. (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 104—23(b).

■ At that discharge hearing, the court is authorized to determine the sufficiency of the evidence against the accused. (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(a).) If the trial court does not enter an order of acquittal pursuant to the discharge hearing, subsection 104—25(d) allows the following:

"[T]he defendant may be remanded for further treatment *and the one year time limit set forth in Section 104—23 shall be extended as follows*: ***

If the State sustained its burden of proof on a charge of murder, *the treatment period may be extended up to a maximum treatment period of 5 years.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 104—25(d)(2).

Section 104—25(g) states that, upon the expiration of an extended period of treatment order in accordance with subsection 104—25(d):

"If the defendant continues to be unfit to stand trial, the court shall determine whether he or she is subject to involuntary admission under the Mental Health and Development Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities or to the Department of Rehabilitation Services for further treatment and shall be treated in the same manner as a civilly committed patient for all purposes, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)(2).

Subsection (g)(4) of section 104—25 explicitly states, "In no event may the treatment period be extended to exceed the maximum sentence to which a defendant would have been subject had he or she been convicted in a criminal proceeding." (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)(4).) Under section 5—8—1 of the Unified Code of Corrections, the maximum sentence for murder is 40 years' imprisonment. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.

█ In light of these provisions, and under the plain language of section 104—25(g), the trial court was empowered to remand the defendant to the Department of Mental Health for treatment and the trial court retained jurisdiction to approve defendant's conditional release or discharge. (*Yiadom v. Kiley* (1990), 204 Ill. App. 3d 418, 429, 562 N.E.2d 310.) However, as shown in the above quotations, sections 104—23 and 104—25 consider a treatment period to commence upon the original finding of unfitness. In addition, section 104—25(g)(4) states that the defendant's treatment period cannot be extended beyond the maximum sentence he would have received had he been convicted of murder, *i.e.*, 40 years. Thus, the trial court's supervisory jurisdiction over the defendant's conditional release or discharge cannot be computed from the date of the court's section 104—25(g) hearing on July 14, 1987. Rather, the trial court's supervisory jurisdiction

over the defendant's conditional release or discharge, during defendant's involuntary admission, began to run from the date of the original finding of defendant's unfitness to stand trial, which occurred in March 1976.

We note that, in according the defendant the status of a "civilly committed patient," section 104—25(g) anticipates application of the provisions of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91½, pars. 3—700 through 3—819) (hereinafter the MHDDC) to the defendant's involuntary admission and treatment. (*Yiadom,* 204 Ill. App. 3d at 429.) The record does not disclose whether the appropriate hearing has been held in defendant's cause. If the appropriate hearing has not been held, the circuit court is directed, on remand, to hold a hearing to determine defendant's continued need for involuntary admission. "If the circuit court deems [defendant's] discharge inappropriate, it can again remand him to custody of [the Department of Mental Health] pursuant to section 104—25(g)(2)." (*Yiadom,* 204 Ill. App. 3d at 431.) We also note that the MHDDC anticipates periodic hearings to reevaluate the defendant's continued need for involuntary admission (see Ill. Rev. Stat. 1989, ch. 91½, par. 3—813), and that such hearings should be held with regard to defendant's involuntary admission. (*Yiadom,* 204 Ill. App. 3d at 431.) In addition, the trial court should hold periodic hearings with respect to the defendant's continued unfitness to stand trial. (*Yiadom,* 204 Ill. App. 3d at 430-31, citing *People v. Lang* (1986), 113 Ill. 2d 407, 444, 498 N.E.2d 1105.) In light of these considerations, the trial court's order is reversed and the matter remanded for further proceedings.

■ The remaining arguments raised by defendant have largely been rejected by prior Illinois precedent, to which we continue to adhere in the instant appeal. Contrary to defendant's claim, he is not entitled to credit for day-for-day good time under section 104—25. (*People v. Williams* (1986), 142 Ill. App. 3d 858, 494 N.E.2d 525.) Also, because section 104—25 refers to the maximum sentence defendant would receive if convicted, the defendant cannot "elect" that the court's supervisory jurisdiction continue for the time period that represents a lesser sentence he might receive upon conviction under the provisions of the former Unified Code of Corrections in effect when the murder was allegedly committed. (See Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b) (maximum term for murder set at "any term in excess of 40 years").) The present procedure, in light of our rulings upon review, does not deprive defendant of equal protection or due process under *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L.

Ed. 2d 435, 92 S. Ct. 1845. See *Yiadom*, 204 Ill. App. 3d 418; *Raseaitis*, 126 Ill. App. 3d 600; *People v. Polachek* (1984), 128 Ill. App. 3d 200, 470 N.E.2d 584.

For the reasons stated, the order of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.