THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARRY BOCIK, Defendant-Appellant.

First District (1st Division)   No. 1—90—1132

Opinion filed March 25, 1991.

Edwin F. Mandel Legal Aid Clinic, of Chicago (Mark Heyrman, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Mary Brigid Kenney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, who was found unfit to stand trial and then placed in the custody of the Department of Mental Health and Developmental

Disabilities (hereinafter DMHDD), appeals from an order entered on March 28, 1990, denying his petition for unconditional discharge. (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)(2).) On appeal, defendant contends: (1) the trial erred in denying him unconditional release since it found that he was not a serious threat to public safety and thus met the statutory standards for release under section 104—25(g)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)(2)) and (2) his continuing commitment violates due process and equal protection guarantees of the State and Federal constitutions.

On December 7, 1989, defendant filed a petition for unconditional discharge or modification of his conditional discharge order. In count I, he alleged he was arrested and charged with residential burglary in Cook County in 1981, found unfit to stand trial on June 14, 1984, and on July 3, 1984, committed to the custody of DMHDD pursuant to section 104—25(g)(2). On December 12, 1984, the court remanded him to the DMHDD for a period not to exceed 15 years. He was conditionally released by court order on July 30, 1987. On May 18, 1988, his release was modified to provide that he continue outpatient treatment at Oak Leyden Development Services Clinic (hereinafter Oak), continue to reside with his mother and take his prescribed medication. Defendant further alleged that he was not personally subject to involuntary admission pursuant to the Mental Health and Developmental Disabilities Code (Mental Health Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 1—119), and section 104—25(g)(2) of the Code of Criminal Procedure since he was not, because of mental illness, reasonably expected to inflict serious physical harm upon himself or another in the near future and could provide for his basic physical needs so as to guard himself from serious harm and did not constitute a serious threat to public safety. Defendant sought unconditional release from the custody of the court pursuant to section 104—25(g)(3) of the Code of Criminal Procedure and section 3—809 of the Mental Health Code. Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g)(3); ch. 91½, par. 3—809.

In count II, defendant also sought unconditional release without alleging that he did not constitute a serious threat to public safety pursuant to section 104—25(g)(2).

In Count III, defendant requested that a court order of May 18, 1988, be amended to allow him to live with his brother, Gerald, in Andover, Minnesota. He alleged that Gerald supported the petition and was willing for defendant to live with him, that defendant would receive outpatient treatment at the Minneapolis/St. Paul Veterans Administration (VA) Hospital and that he would continue to take his pre-

scribed medication. He alleged that these arrangements would reasonably assure his satisfactory progress and treatment, his safety and that of others.

At a hearing on the petition on March 28, 1990, Dr. Robert Reifman, director of the Psychiatric Institute of the Circuit Court of Cook County (hereinafter Institute), and a board-certified psychiatrist, testified that he examined defendant on February 13, 1990, as well as other occasions. He also reviewed defendant's file at the Institute going back to 1983. Defendant was also examined by three other psychiatrists. He also considered a social history given to him by defendant's mother, information from defendant's sister-in-law in Minneapolis, and records from Cook County Hospital, Loyola Medical Center, DMHDD and Oak Forest Hospital, covering a period from 1982 on. After defendant was arrested for the residential burglary, he suffered a brain aneurysm and hemorrhage resulting in the destruction of parts of his brain and serious neurological deficiency.

Dr. Reifman testified that in his opinion defendant was not likely to inflict serious harm on himself or others in the near future, he was able to provide for his basic physical needs so as to guard himself from serious harm, and he did not constitute a serious threat to public safety, to himself or to other persons. Dr. Reifman also commented that defendant's plan to change his residence to Minnesota and attend the VA Hospital in Minnesota was reasonable based on defendant's mental state and conversations with defendant's relatives in Minnesota. In his opinion, defendant would never be fit for trial because he was unable to cooperate with counsel on the charge of residential burglary that allegedly took place in 1982. Defendant also had some difficulty understanding the purpose of the proceedings, and the functions of the various people and the court. It appeared to Dr. Reifman that defendant did understand the nature of the charges, and his main difficulty was in conceptual ideas. Dr. Stipes of the Institute reached the same conclusions in his reports regarding similar work he did with defendant in January 1990.

The court called defendant to testify and asked about his plans to go to Minnesota. Defendant explained his family activities with his brother's seven children in Minnesota and his art work. The court asked defendant to promise that he would not get into any more trouble or hurt anybody if the court let him go to Minnesota, and defendant agreed. The court said that it would amend the prior order to allow defendant to reside with his family in Minnesota. The court also said that it would deny the petition for unconditional discharge at this time without prejudice to defendant presenting it at some future time.

In its written order, the court found that defendant was not reasonably expected to inflict serious harm upon himself or another, he could provide for his basic physical needs so as to guard himself from serious physical harm and he did not constitute a serious threat to himself or others. The court stated that his continuance of outpatient treatment at the Minneapolis/St. Paul VA Hospital and his following the prescribed medical regime reasonably assured satisfactory progress in treatment and the safety of defendant and others. The court denied defendant's petition for unconditional release without prejudice, modified the conditions of defendant's release to permit him to live with his brother in Minnesota and obtain treatment from the VA Hospital in Minneapolis and continued the order of the court for a period not to exceed 15 years from the date of defendant's commitment.

■ Defendant contends that the trial court found he met the statutory standards for release and should have granted him release under section 3—901(b) of the Mental Health Code, which provides that if after a hearing on the person's petition for discharge, the court finds the person is not subject to involuntary admission, the court "shall enter an order so finding and discharge the patient." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—901(b).) Discharge of a defendant found unfit and committed is governed by section 104—25(g) of the Code of Criminal Procedure, which provides:

"(g) At the expiration of an extended period of treatment ordered pursuant to this Section:

(1) Upon a finding that the defendant is fit or can be rendered fit consistent with Section 104—22, the court may proceed with trial.

(2) If the defendant continues to be unfit to stand trial, the court shall determine whether he or she is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities or to the Department of Rehabilitation Services for further treatment and shall be treated in the same manner as a civilly committed patient for all purposes, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding. However, if the

defendant is remanded to the Department of Mental Health and Developmental Disabilities, the defendant shall be placed in a secure setting unless the court determines that there are compelling reasons why such placement is not necessary.

(3) If the defendant is not committed pursuant to this Section, he or she shall be released.

(4) In no event may the treatment period be extended to exceed the maximum sentence to which a defendant would have been subject had he or she been convicted in a criminal proceeding. For purposes of this Section, the maximum sentence shall be determined by Section 5—8—1 of the 'Unified Code of Corrections,' excluding any sentence of natural life." Ill. Rev. Stat. 1989, ch. 38, par. 104—25(g).

■■ ■ To subject a person to involuntary commitment, the State must show by clear and convincing evidence not only that the person is suffering from a mental illness but that such illness may also cause him to inflict serious physical harm upon himself or another in the near future or that he is unable to provide for his basic physical needs so as to guard himself from serious harm. (Ill. Rev. Stat. 1989, ch. 91½, par. 1—119; *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 504, 520 N.E.2d 37; *In re Stephenson* (1977), 67 Ill. 2d 544, 556, 367 N.E.2d 1273; *Addington v. Texas* (1979), 441 U.S. 418, 431-33, 60 L. Ed. 2d 323, 334-35, 99 S. Ct. 1804, 1812.) On the one hand, conviction of an accused person while he is incompetent violates due process. (*Pate v. Robinson* (1966), 383 U.S. 375, 378, 15 L. Ed. 2d 815, 818, 86 S. Ct. 836, 838.) On the other hand, due process forbids the involuntary confinement of persons who are dangerous to no one and can live safely in freedom (*O'Connor v. Donaldson* (1975), 422 U.S. 563, 575, 45 L. Ed. 2d 396, 407, 95 S. Ct. 2486, 2493-94), and indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial "does not square with the Fourteenth Amendment's guarantee of due process." *Jackson v. Indiana* (1972), 406 U.S. 715, 731, 32 L. Ed. 2d 435, 447, 92 S. Ct. 1845, 1854.

■■ ■ The standard in section 104—25(g)(2) is the same standard applied to civilly committed persons pursuant to section 1—119 of the Mental Health Code. (*People v. Polachek* (1984), 128 Ill. App. 3d 200, 205, 470 N.E.2d 584.) It is clear from the findings of the court and from the uncontradicted testimony the court considered that the State did not clearly and convincingly establish that defendant was a person subject to involuntary admission. The evidence and the findings signify the opposite, that defendant was not, at the time of the hearing,

such a person. The record shows that on December 12, 1984, defend-. ant was found not likely to be fit within two years and in need of treatment. Defendant was again involuntarily committed on January 15, 1987. However, on May 18, 1988, defendant was found not dangerous to himself or others. The court then ordered defendant to continue to reside at home with his mother and that his bail bond deposit be paid to her. Defendant was also required to attend counseling and take prescribed medication.

On January 24, 1990, the court ordered Dr. Reifman to conduct an examination of defendant. On February 21, 1990, Dr. Reifman filed a report with the court and stated that he examined defendant on February 13, 1990, and after a review of his records, defendant remained similar to previous examinations. Dr. Reifman diagnosed defendant as having a mixed organic brain syndrome. In his opinion, defendant was not reasonably expected to inflict serious harm on himself or another in the near future, he was able to provide for his basic physical needs so as to guard himself from serious harm, and he did not constitute a serious threat to public safety. Defendant remained unfit for trial and there was not a reasonable probability that he would ever become fit. In his opinion, the program of changing residences so defendant could live in Minnesota with his brother and attend the VA Medical Center was sufficient to supply his medical needs and assure his progress for the safety of himself and others. The record contains a report of Dr. Albert H. Stipes which is virtually identical to Dr. Reifman's report.

■ Considering the entire record, we can find no basis to conclude that defendant was a person subject to involuntary admission under the Mental Health Code or that he constituted a serious threat to public safety. The order denying discharge was against the manifest weight of the evidence. Since there was no evidence that defendant would ever be fit for trial, the court could not proceed with the criminal trial. Also, since the court's order did not find defendant a person subject to involuntary admission under the Mental Health Code, he was required to be released under section 104—25(g)(3). (Ill. Rev. Stat. 1989, ch. 38, par. 105—25(g)(3).) Therefore, the trial court should have granted defendant's petition for unconditional release.

■ The State argues that the court's order, read as a whole, meant that defendant would not inflict harm on himself or others and could provide for his basic physical needs only if he lived with his brother and continued his outpatient treatment and medication. However, the court found in its order that defendant was not reasonably expected to inflict serious harm upon himself or another and could

provide for his basic physical needs so as to guard himself from serious physical harm, and he did not constitute a serious threat to public safety or to himself or others. These findings are unequivocal and unconditional.

■ The State also says that section 105—25(g)(2) provides that the original court having jurisdiction over defendant shall be required to approve any conditional release or discharge of defendant, the court gave the defendant "what he wanted," defendant was "pleased" with that decision and never objected at trial. The unstated conclusion of this argument apparently is that defendant waived any objections to the decision. We know of no authority, and the State has cited none, to support the proposition that a defendant's failure to object to the court's decision at trial under the circumstances would preclude a timely appeal of that decision.

■ The State also says that the court has jurisdiction over defendant until 1996 since section 104—25(g)(2) of the Code of Criminal Procedure provides that the period of commitment cannot exceed the maximum sentence to which defendant would have been subject had he or she been convicted in a criminal proceeding, which is 15 years in the case of residential burglary, so that the court's jurisdiction over defendant would not expire until 1996. We find no authority that such an upper limit applies to a defendant not subject to involuntary commitment who has no prospect of retaining fitness and who has been released from the obligation of his bailbond.

In *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, cited by defendant in this regard, the Court considered the situation of a mentally defective deaf mute charged with two crimes and found unfit to stand trial. There was no evidence that he could ever be rendered fit for trial, which made his commitment, in effect, permanent. The Court found that indefinite commitment solely on the basis of the accused's incompetence to stand trial was a violation of his due process rights. The Court in *Jackson* held that a defendant committed solely on account of his unfitness, who will not likely obtain fitness in the foreseeable future, must be committed civilly or released.

■ However, *Jackson* has been distinguished in Illinois on the basis that the defendant is committed for a determined period only after a discharge hearing at which the State must meet its burden of proof, and thus, defendant is not committed solely because he is not fit for trial. (*Yiadom v. Kiley* (1990), 204 Ill. App. 3d 418, 426-27, 562 N.E.2d 310.) In this case there was a discharge hearing and the commitment is thereby predetermined at a 15-year maximum. In *Yiadom*,

however, the court found that defendant was subject to involuntary commitment. To allow the State to deny defendant a discharge when he is not subject to involuntary commitment would deny defendant due process under *Jackson* even though the court has heard evidence to support the charges and although the statute provides a 15-year upper limit on his confinement.

Therefore, the order of the circuit court of Cook County is reversed.

Order reversed.

BUCKLEY and O'CONNOR, JJ., concur.